**370**

El Municipio de Ponce, demandante y apelado, v. Alberto Vidal Vilaret y su esposa Josefa Santiago Rivera, demandados y apelantes.

Núm. 9018.—*Sometido:* Abril 6, 1945. *Resuelto:* Noviembre 15, 1945.

*Gustavo Rodríguez* y *R. V. Pérez Marchand,* abogados de los apelantes; *F. M. Susoni, Jr.,* abogado del apelado.

El Juez Asociado Señor De Jesús emitió la opinión del tribunal.

El 11 de febrero de 1925 Alberto Vidal y su esposa celebraron un contrato con el Municipio de Ponce a virtud del cual los primeros constituyeron a favor del segundo una servidumbre a perpetuidad para el tendido de los tubos del acueducto sobre una faja de terreno que atraviesa cuatro fincas de su propiedad. La servidumbre incluye, además, un derecho de paso a favor del Municipio sobre las cuatro fincas, de cuatro metros de ancho, a lo largo de la tubería, para facilitar su construcción, conservación e inspección, debiendo el Municipio colocar a lo largo de la tubería portones y can-

dados con dos llaves, reservándose los dueños de la fincas el derecho de utilizar la superficie del terreno sobre la tubería, pero sin causar daños al tubo matriz.

Como precio de esta servidumbre, el Municipio les concedió el derecho de tomar a perpetuidad 18,000 galones de agua por cada veinticuatro horas distribuídos proporcionalmente para las cuatro fincas afectadas por la servidumbre, bajo las siguientes condiciones: (1) La acometida e instalación del contador será por cuenta del Municipio. (2) Las concesiones de agua serán utilizadas por los dueños de la propiedad para usos domésticos, abrevaderos de ganado y limpieza de establos, siendo entendido que los dueños de las propiedades afectadas por la servidumbre tendrán el derecho de tomar mayor cantidad de agua por día para los mismos fines, pagando, desde luego, el excedente de agua de acuerdo con la tarifa que rija. (3) "El Municipio de Ponce se compromete a sacar a pública subasta de acuerdo con la ley, el terreno que ocupa la toma de agua actual, una vez que se haya decidido que no será necesaria al servicio de acueducto."

El 3 de abril de 1941 el Municipio de Ponce instituyó este pleito sobre rescisión de contrato y como causa de acción, en adición a los hechos expuestos, sustancialmente alegó: Que los demandados, en violación del mencionado contrato de servidumbre y con el propósito de apropiarse de mayor cantidad de agua que la autorizada por el contrato, conectaron al tubo matriz del acueducto cuatro acometidas que se identifican en la demanda; que mediante el uso de bombas y un molino de motor han venido utilizando 624,000 galones[1] de agua por cada veinticuatro horas en exceso de los 18,000 a que asciende la concesión; que dicho exceso lo han utilizado para fines de regadío en contravención a las especificaciones del contrato y sin pagar al demandante cantidad alguna por dicho

---

[1] La demanda alegaba que los demandados utilizaban un total de 12,000 galones de agua por cada veinticuatro horas, pero durante el juicio esta alegación se enmendó haciendo subir el exceso a 624,000 galones por cada veinticuatro horas.

exceso; y que con el uso ilegal de esas aguas los demandados afectan vitalmente la capacidad del acueducto, privando a la comunidad del agua necesaria para fines domésticos y amenazando la salud pública. Termina la demanda suplicando una sentencia con los siguientes pronunciamientos:

"(a) Declarar rescindido y rescindir el contrato formalizado a virtud de la escritura núm. 5 de 11 de febrero de 1925, otorgada ante el notario Domingo Sepúlveda en cuanto a las cláusulas b, c, d y e;(²)

"(b) Disponiendo la desconexión y clausura de toda acometida o conexión de tubos al tubo matriz del acueducto a todo lo largo de dicho tubo que pasa a través de las propiedades de los demandados, sujetas al contrato de servidumbre;

"(c) Condenando a los demandados solidaria y mancomunadamente a pagar las costas, gastos y honorarios de abogado de este trámite".

Los demandados interpusieron excepciones previas de falta de causa de acción y la de existir otra acción pendiente ante la misma corte por la misma causa; y que en el supuesto de que la demanda fuese suficiente, de la faz de la misma aparece que la acción ejercitada está prescrita. Ha-

---

(²)Las cláusulas b, c, d y e, según aparecen del contrato de servidumbre, son las siguientes: (Pág. 20, T. de E.).

"b.—El Municipio de Ponce concede a doña Josefa Santiago de Vidal y a su esposo don Alberto Vidal, el derecho de tomar a perpetuidad diez y ocho mil galones de agua por cada veinticuatro horas, distribuídas proporcionalmente para las cuatro fincas afectadas por la servidumbre. La acometida e instalación del contador será por cuenta del Municipio.

"Es convenido que en caso de emergencia, se dará a las partes contratantes las mismas oportunidades que a la ciudad de Ponce, en proporción a sus respectivos intereses.

"c. Es entendido que las concesiones de agua serán utilizadas por el dueño de la propiedad para usos domésticos, abrevaderos de ganado y limpieza de establos.

"d. Queda convenido que el dueño de las propiedades afectadas a esta servidumbre se reserva el derecho de tomar mayor cantidad de agua por día para los mismos fines, pagando, desde luego, el excedente de agua, de acuerdo con la tarifa que rija.

"e. Queda convenido que el Municipio de Ponce se compromete a sacar a pública subasta de acuerdo con la ley, el terreno que ocupa la toma de agua actual, una vez que se haya decidido que no será necesaria al servicio del acueducto."

biendo sido desestimadas reprodujeron en su contestación la de insuficiencia de hechos para constituir una causa de acción, y por primera vez alegaron la excepción de defecto de parte demandante.

Considerando el caso en sus méritos, la corte inferior dictó sentencia declarando nulo el contrato en controversia por ser a su juicio contrario al orden público y condenó a los demandados al pago de $2,000 de honorarios de abogado y las costas.

Sostienen los demandados-apelantes que la corte erró al desestimar su excepción previa de insuficiencia de hechos constitutivos de causa de acción.

La acción rescisoria está regulada por el artículo 1243 del Código Civil y sólo pueden rescindirse los contratos especificados en dicho artículo, el cual dice así:

"Artículo 1243. Son rescindibles:

"1. Los contratos que pudieren celebrar los tutores sin autorización de la corte de distrito competente, siempre que las personas a quienes representan hayan sufrido lesión en más de la cuarta parte del valor de las cosas que hubiesen sido objeto de aquéllos.

"2. Los celebrados en representación de los ausentes, siempre que éstos hayan sufrido la lesión a que se refiere el número anterior.

"3. Los celebrados en fraude de acreedores, cuando éstos no puedan de otro modo cobrar lo que se les deba.

"4. Los contratos que se refieran a cosas litigiosas cuando hubiesen sido celebrados por el demandado sin conocimiento y aprobación de las partes litigantes o de la autoridad judicial competente.

"5. Cualesquiera otros en que especialmente lo determine la ley."

Comentando Manresa el artículo 1291 del Código Civil Español idéntico al 1243 del nuestro, dice:

"I. *Casos de rescisión enumerados por la ley.*—La enumeración que la ley hace de los contratos rescindibles, tiene el siguiente alcance: no circunscribe la rescisión a los cuatro que primeramente enumera, puesto que salva en el quinto con toda amplitud cualquier otro que estuviese determinado especialmente por otro precepto; pero sirve para indicar que, a falta de texto que lo autorice, no se

podrá utilizar, ni aun invocando perjuicios u otras razones, la acción rescisoria, que es excepcional, no ordinaria''.

(8, Manresa, Comentarios al Código Civil Español, pág. 730).

Es evidente que el presente caso no está comprendido en los cuatro primeros números del artículo 1243. Por consiguiente, debemos determinar si el contrato celebrado entre el Municipio de Ponce y los demandados está comprendido en el número cinco, es decir, entre aquéllos que, por disposición especial de la ley, son rescindibles.

██ Entre los casos a que se refiere el número cinco, en que por disposición especial de la ley procede la acción rescisoria, se hallan ciertos artículos relacionados con el contrato de compraventa—que desde luego, no son de aplicación al presente caso—y el artículo 1077 del Código Civil que concede la facultad de resolver las obligaciones recíprocas, en el caso de que uno de los obligados no cumpliere lo que le incumbe.

Examinemos, pues, el artículo 1077 del Código Civil:

"Artículo 1077.—La facultad de resolver las obligaciones se entiende implícita en las recíprocas, para el caso de que uno de los obligados no cumpliere lo que le incumbe.

''El perjudicado podrá escoger entre exigir el cumplimiento o la resolución de la obligación, con el resarcimiento de daños y abono de intereses en ambos casos. También podrá pedir la resolución, aún después de haber optado por el cumplimiento, cuando éste resultare imposible.

''El tribunal decretará la resolución que se reclame, a no haber causas justificadas que la autoricen para señalar plazo.

''Esto se entiende sin perjuicio de los derechos de terceros adquirentes, con arreglo a los artículos 1247 y 1250 y las disposiciones de la ley hipotecaria.''

No todo incumplimiento de una obligación contractual da derecho a la acción resolutoria[3] que concede el artículo 1077 del Código Civil. Para que la acción exista es preciso

---

[3] Los autores, la jurisprudencia y algunos códigos usan indistintamente los vocablos ''resolutoria'' y ''rescisoria'', y aunque a los efectos del artículo 1077 del Código Civil la correcta denominación de la acción es ''resolutoria'', en realidad el uso de uno u otro vocablo no afecta el fondo de la cuestión.

que la obligación incumplida tenga el carácter de recíproca. Por esa razón, para determinar si la obligación incumplida por los demandados da lugar a la resolución del contrato, precisa previamente fijar el concepto de las obligaciones recíprocas.

En los contratos bilaterales existen prestaciones y contraprestaciones a tal extremo interdependientes entre sí, que la una es la causa determinante de la otra, y el cumplimiento de esa obligación por un contratante constituye el motivo del contrato para el otro, y viceversa. Así vemos que en el contrato de compraventa la obligación del vendedor de entregar la cosa vendida es el motivo del contrato para el comprador, y la obligación correlativa del comprador de entregar el precio es a su vez el objeto del contrato para el vendedor. Tales son las obligaciones recíprocas que contempla el artículo 1077 del Código Civil.

Existen, además, otras obligaciones que se incorporan a los contratos cuyo objeto es meramente completar y aclarar las estipulaciones de los contratantes, las cuales no constituyen el verdadero motivo para la celebración del contrato y se denominan obligaciones accesorias o complementarias. Tales son en la compraventa, por ejemplo, entre otras, la obligación del vendedor de responder de la evicción y saneamiento y la del comprador de pagar el precio de la cosa vendida en el tiempo y lugar fijados por el contrato. El incumplimiento de estas obligaciones accesorias o complementarias, dará lugar a una acción de daños y perjuicios o a cualquiera otra que justifiquen las circunstancias de cada caso, pero nunca a la acción resolutoria regulada por el artículo 1077 del Código Civil, reservada exclusivamente para el caso del incumplimiento de las obligaciones recíprocas.

Don José Castán en su moderna obra ''Derecho Civil Español Común y Foral, Sexta Edición Revisada (1943), Tomo 2, pág. 482, explicando el concepto de las obligaciones recíprocas, dice:

"El citado .art. 1,124 es de gran importancia por su constante aplicación en la práctica, y ha motivado copiosa jurisprudencia del Tribunal Supremo. Entre sus declaraciones destacan las siguientes:

"" * * * * * * *

"2) Que para la aplicación del art. 1,124 se requiere: a) Que se trate de obligaciones en las que el principio de reciprocidad esté perfectamente caracterizado, puesto que no entra en juego dicho artículo cuando se trata de obligaciones que, estando incorporadas a un contrato unilateral o bilateral, tienen puro carácter accesorio o complementario con relación a aquellas prestaciones, o contraprestaciones en su caso, que constituyen el objeto principal del contrato."

El Sr. Castán cita en apoyo de su tesis las Sentencias de 24 de octubre de 1899 (88 J. C.171), 14 de febrero (123 J. C. 490) y 29 de septiembre de 1912, 13 de marzo de 1930 (193 J. C. 251), 5 de enero de 1935 (217 J. C. 36) y 24 de octubre de 1941.

Y Manresa lo explica así:

". . . La bilateralidad o reciprocidad de las obligaciones supone desde luego que los dos sujetos, términos necesarios de la relación obligatoria, sean a la vez deudores y acreedores el uno del otro. Pero no basta con esto: *significa aquella nota de estas obligaciones algo más, una reciprocidad tan perfecta, que haga proceder ambas relaciones de una misma causa, siendo también cada obligación supuesto de la correlativa, no concibiéndose, en suma, la una sin la otra.* . . . Aún más; celebrado un contrato de préstamo comodato, tiene el comodatario la obligación de restituir, y puede tener el comodante la de abonar a aquél gastos hechos en la cosa contractual, y, sin embargo, no se da en tales obligaciones la nota de reciprocidad en su genuino sentido, puesto que, distinguiendo bien en aquéllas, se ve que no tienen rigurosamente su origen en una misma, *idéntica* causa, y, sobre todo, *que no surgen a la vez, como necesarias ambas y fundamento mutuo la una para la otra.* En cambio sí percibimos con toda evidencia esa nota de reciprocidad comparando en la compraventa las obligaciones de comprador y de vendedor para entregar respectivamente el precio y la cosa; o en el arrendamiento las de acreedor y arrendatario, para permitir el uno el uso de la cosa arrendada, y para pagar el otro la merced convenida, etc. etc., y es que en todos esos casos no podemos, sin desnaturalizar cada obligación, imaginarla sin la otra." (Manresa, Comentarios al Código Civil Español, T. 8, pág. 148.) (Bastardillas nuestras.)

Pero donde con más claridad se ilustra el concepto de las obligaciones recíprocas es en la Sentencia del Tribunal Supremo de España de 5 de enero de 1935, 217 Jurisprudencia Civil, pág. 36. Los hechos del caso pueden resumirse así:

Doña Antonia Pellicer había entregado al Banco de Reus de Descuentos y Préstamos, que más adelante llamaremos Banco de Reus, ciertas letras de cambio que habían vencido y no habían sido satisfechas. Para evitar que el Banco procediese al cobro judicial de las letras de cambio, doña Antonia Pellicer y el Banco de Reus celebraron un contrato a virtud del cual el Banco se obligó a no ejecutar dichas letras durante un término de cinco años, y como compensación a dicha renuncia doña Antonia Pellicer se obligó a indemnizar al Banco hasta la suma de 150,000 pesetas por razón de cualquier pérdida o perjuicio que se le pudiera ocasionar como consecuencia de esa posposición, si dentro de cinco años no hubiese podido conseguir el reintegro de lo adeudado al Banco. Para garantizar el cumplimiento de esta obligación, doña Antonia Pellicer se obligó a depositar en el Banco de Reus en metálico y sin interés la cantidad de 150,000 pesetas, la cual no podía reclamar hasta transcurrido un plazo de cinco años, facultando al Banco para hacer suyas en su caso la totalidad o la parte necesaria de dichas 150,000 pesetas para aplicarla a las pérdidas sufridas por el indicado concepto. Se consignó en el contrato que teniendo en cuenta el sacrificio que había representado a la señora Pellicer la garantía constituída, toda vez que había tenido que tomar a préstamo del Banco de Cataluña las 150,000 pesetas al interés del 5 por ciento anual, el Banco de Reus tomó a su exclusivo cargo la obligación de pagar al de Cataluña los intereses de las 150,000 pesetas prestadas a la señora Pellicer con entera indemnidad de ésta. El Banco de Cataluña, sin embargo, no fué parte en el contrato celebrado entre el Banco de Reus y la señora Pellicer y nunca relevó a la señora Pellicer de la obligación de pagar dichos intere-

ses en el caso de que el Banco de Reus no lo hiciera. Después de haber pagado éste algunos de los plazos de intereses, se enteró la señora Pellicer que el Banco de Reus había dejado de satisfacerlos y estableció este pleito para resolver el contrato celebrado con el Banco de Reus, alegando que' el demandado había dejado de cumplir una obligación recíproca al no pagar los intereses al Banco de Cataluña y solicitó que, resuelto el contrato, se le entregase la cantidad de 150,000 pesetas que había depositado en el Banco. El Juzgado de Primera Instancia de Reus declaró con lugar la demanda y en su sentencia, equivocando el verdadero concepto de la obligación recíproca, se expresó así:

"Ningún artículo del Código Civil autoriza para dar a las obligaciones recíprocas el sentido de correlación que el demandado le quiere atribuir, sino sencillamente el significado gramatical de la reciprocidad, o sea, que cada uno de los contratantes tenga obligaciones que cumplir para con el otro, o no, entre sí, bastando para convencerse el considerar, primero, que en las obligaciones derivadas de los contratos de arrendamiento y compraventa, por ejemplo hay muchas, como las de hacer reparaciones, mantener la posesión, comunicar cualquier usurpación, no variar la forma, responder de la evicción y saneamiento, etc., que no dejan de ser recíprocas a pesar de que no sean correlativas, y las de entregar la cosa o el precio; y segundo, que la expresada teoría conduciría al absurdo de que un contratante pudiera faltar al cumplimiento de todas sus obligaciones que no tuvieran correlatividad con las del otro, y que, sin embargo, no pudiera éste exigirle la resolución de las suyas."

Recurrió el Banco para ante la Audiencia de Barcelona y dicho Tribunal revocó la sentencia del Juzgado de Primera Instancia de Reus. Recurrió entonces la señora Pellicer para ante el Tribunal Supremo de Madrid y éste confirmó la sentencia de la Audiencia de Barcelona, y, entre otras cosas, dijo:

"Primero. Que del mencionado convenio nacieron dos claras obligaciones recíprocas, a saber, la del Banco de Reus, de no ejercitar ninguna acción dimanante de ciertas letras de cambio contra doña Antonia Pellicer y otras personas, y la de doña Antonia Pe-

llicer de indemnizar a dicho Banco los perjuicios y pérdidas que pudiera sufrir a causa de las operaciones de cambio referidas, hasta la suma de 150,000 pesetas, si dentro de cinco años no se reintegrase el Banco de todas ellas; obligación esta última garantizada mediante la constitución de un depósito en metálico y sin intereses por aquella cantidad.

"Segundo. Que además se estableció en dicho convenio otra obligación a cargo del Banco de Reus, al consignarse en él que, teniendo en cuenta el sacrificio que había representado a doña Antonia la garantía constituída a favor del Banco de Reus de Descuentos y Préstamos, puesto que para procurarse las 150,000 pesetas depositadas había debido tomarlas a préstamo del Banco de Cataluña al interés del 5 por 100 anual, el Banco de Reus tomaba a su exclusivo cargo la obligación de pagar al referido Banco de Cataluña los intereses de las 150,000 pesetas prestadas a la repetida doña Antonia Pellicer, con entera indemnidad de ésta.

" " *    *    *    *    *    *    *

"Considerando que para que pueda hablarse de obligaciones bilaterales o recíprocas hace falta, no sólo que en un mismo contrato se establezcan prestaciones a cargo de ambas partes, sino que la obligación de cada una de ellas haya sido querida como equivalente de la de la otra, y, por consiguiente, exista entre ellas una mutua condicionalidad; de donde se desprende fácilmente esta doble consecuencia:

"Primera. Que, como ya tiene declarado esta Sala, es necesario para la aplicación del art. 1.124 del Código Civil, que el principio de reciprocidad esté tan perfectamente caracterizado, que no se conciban unas obligaciones sin otras (sentencias de 14 de marzo de 1913 y 30 de Octubre de 1917.)

"*Segunda. Que no entra en juego dicho artículo cuando se trata de obligaciones que, estando incorporadas a un contrato unilatertal o bilateral, tienen puro carácter accesorio o complementario, con relación a aquellas prestaciones y contraprestaciones, en su caso, que constituyen el objeto principal del contrato.*" (217 Jurisprudencia Civil, págs. 45, 46) (Bastardillas nuestras.)

Aplicando al caso que nos ocupa los principios que acabamos de enunciar, fácil será concluir que las obligaciones recíprocas en el caso de autos son: por parte de los demandados, la constitución de la servidumbre, y por parte del demandante, la concesión de la cantidad de 18,000 galones

de agua por cada veinticuatro horas; y que la obligación de los demandados de no usar el agua para otros fines que no fuesen los estipulados, es una obligación accesoria o complementaria. Por consiguiente, aceptando que la hubiesen violado los demandados, esa obligación, por no ser recíproca, no da lugar a la resolución del contrato. Como antes hemos indicado, esto no implica que en casos como el presente en que la evidencia tiende a demostrar que los demandados violaron la obligación accesoria de no usar el agua para fines de regadío, el demandante carezca de recurso alguno para obtener reparación. Bien pudo el demandante, mediante acción de daños y perjuicios por incumplimiento de dicha obligación, obtener reparación por el agua ilegalmente consumida por los demandados, y por un auto de injunction impedir la repetición del acto ilegal, todo ello sin perjuicio de la acción criminal que pudiera instituir por el hurto del agua.

Pero el juez de la corte inferior, en vez de declarar con lugar la excepción previa de falta de hechos constitutivos de causa de acción, la denegó y resolviendo el caso en sus méritos, declaró que el contrato celebrado entre el demandante y los demandados era nulo por ser contrario al orden público. Es de notar que en la demanda no se hace alegación alguna con respecto a la supuesta nulidad del contrato ni se solicita ese remedio, limitándose el demandante a pedir que se rescinda el contrato aunque de un modo *sui generis,* pues solicita que los demandados sean privados del agua a que les da derecho el contrato, continuando el demandante gozando de sus beneficios. Los demandados tampoco solicitaron que el contrato fuese declarado nulo, limitando su súplica a pedir que la demanda fuese desestimada. El juez confundió la acción rescisoria o resolutoria con la acción de nulidad. Si bien es verdad que en una y otra el término de prescripción es de cuatro años, y que al decretarse la rescisión lo mismo que al decretarse la nulidad, los

contratantes deben restituirse recíprocamente las cosas que hubieren sido materia del contrato con sus frutos y el precio con sus intereses, de ese modo dejando las cosas en el estado en que se hallaban al perfeccionarse el contrato, es lo cierto qué son dos acciones distintas. A este efecto dice Falcón:

"Tiene buen cuidado nuestro Código, de no confundir, como lo hacen algunos Códigos extranjeros, la rescisión y la nulidad; porque, efectivamente, la rescisión y la nulidad no son cosas iguales en el derecho, por más que a veces se confundan sus efectos.

"La rescisión invalida un contrato válidamente formado, y lo invalida a virtud de una justa causa descubierta con posterioridad a su celebración. La nulidad es una declaración de que el contrato no ha existido nunca, por haber faltado en su formación alguno de los requisitos esenciales del mismo. La rescisión y la nulidad dejan sin efecto los contratos; pero la rescisión los deja por motivos de equidad que no afectan realmente a su validez. La nulidad los deja por motivos que afectan a su misma existencia. Por consiguiente, las causas de la rescisión y las causas de la nulidad son y no pueden menos de ser distintas; y este es el motivo por qué el Código las trata con la debida separación." (Falcón, Código Civil, Tomo 4, págs. 122, 123.)

Siendo, como son, dos acciones distintas y no existiendo en las alegaciones ni en la prueba base alguna para que el juez pudiese decretar la nulidad del contrato, erró al dictar la sentencia apelada: *Crespo* v. *Crespo*, ante, pág. 341.

*Procede por lo expuesto revocar la sentencia apelada y en su lugar dictar la que debió haber dictado la corte inferior, o sea, declarando sin lugar la demanda con imposición de costas al demandante.*