EMILIO VÉLEZ SANTIAGO, demandante y apelado, *v.* LUIS RÍOS FLORES, demandado y apelante.

Número 11158.

*Sometido:* 3 de mayo de 1954. *Resuelto:* 7 de julio de 1954.

*García Méndez & García Hermida,* abogados del apelante; *José Luis Méndez,* abogado de la apelada.

El Juez Asociado Señor Marrero emitió la opinión del Tribunal.

Por escritura pública fechada el 27 de noviembre de 1950, Emilio Vélez Santiago y su esposa cedieron en arrendamiento a Luis Ríos Flores una finca rústica con área de 36 cuerdas en el Barrio Robles de San Sebastián, en la cual radicaban una casa de vivienda, otra de almacén y otra dedicada a guardar aperos de labranza. El canon anual se fijó en la suma de $600. Entre las condiciones de la escritura figura la de que "el arrendatario queda prohibido de establecer servidumbre de clase alguna en el terreno que toma en arrendamiento, *así como también le queda prohibido terminantemente tumbar las palmas de grano y árboles frutales*," (bastardillas nuestras) y la de que "los esposos arrendadores . . . se obligan a venderle a don Luis Ríos Flores por la suma de ocho mil quinientos dólares ($8,500) al contado, la finca objeto de este arrendamiento en cualquier momento que dicho arrendatario utilice este derecho que se le concede durante el término de cinco años a que se contrae este arrendamiento . . ."

A virtud de ese contrato entró en posesión el arrendatario. Poco más de un año después los arrendadores instaron ante el antiguo Tribunal de Distrito de Puerto Rico, Sección de Aguadilla, una demanda sobre resolución de contrato de arrendamiento y daños y perjuicios. En ella hicieron constar ser dueños de la finca mencionada, haber cumplido los términos del contrato y su incumplimiento por el arrendatario al ordenar en 22 y 23 de octubre y 15 de diciembre de 1951 "a sus peones tumbar . . . 27 palmas de yagua, 4 palmas de coco, 7 árboles de pana, 2 árboles de aguacate, 2 árboles de china, un árbol de limón dulce, 3 árboles de higüera y una palma de coyote." Como segunda causa de acción se alegó en ella haber sufrido el demandante los daños y perjuicios que se especifican. Se solicita la resolución y rescisión del contrato de arrendamiento, el pago de $464 como valor de los árboles y palmas destruídos, $700 por pérdida en el valor de la finca, más las costas y honorarios de abogado. El deman-

dado contestó. Fué el pleito a juicio y como resultado de éste el tribunal a quo dictó sentencia declarando con lugar la demanda, decretando la rescisión del contrato de arrendamiento y condenando al demandado a pagar $464 como valor de los árboles destruídos, más $700 como pérdida en el valor en el mercado de la finca por los daños causados, más $200 para honorarios de abogado y las costas.

El demandado apeló en su oportunidad. Imputa al tribunal sentenciador haber errado: (1) al declarar rescindido el contrato de arrendamiento; (2) al condenar al apelante a pagar la cantidad de $464 por concepto de daños por la tumba de árboles sin evidencia alguna que lo justifique; (3) al condenar al pago de $700 por supuesta pérdida en el valor en el mercado de la finca arrendada por la tumba de árboles, por los cuales se concedió la indemnización de $464, y además, sin el menor indicio de prueba para justificar tal pérdida; y (4) al conceder la suma de $200 como honorarios de abogado y las costas del proceso.

■ Dispone el art. 1444 del Código Civil, ed. 1930, según fué enmendado por la Ley núm. 220 de 12 de mayo de 1942 (pág. 1177) que:

"El arrendador está obligado:

"1. A entregar al arrendatario la cosa objeto del contrato.

"2. A hacer en ella durante el arrendamiento todas las reparaciones necesarias a fin de conservarla en estado de servir para el uso a que ha sido destinada.

"3. A mantener al arrendatario en el goce pacífico del arrendamiento por todo el tiempo del contrato.

"4. A suscribir y entregar al arrendatario un recibo por cada pago hecho por éste."

El art. 1445 que:

"El arrendatario está obligado:

"1. A pagar el precio del arrendamiento en los términos convenidos.

"2. A usar de la cosa arrendada como un diligente padre de familia, destinándola al uso pactado; y en defecto de pacto, al

que se infiera de la naturaleza de la cosa arrendada según la costumbre de la tierra.

"3. A pagar los gastos que ocasione la escritura del contrato."

Y el art. 1446 que:

"Si el arrendador o el arrendatario no cumplieren las obligaciones expresadas en los artículos anteriores *podrán pedir la rescisión del contrato y la indemnización de daños y perjuicios, o sólo esto último, dejando el contrato subsistente.*" (Bastardillas nuestras.)

En el presente caso, sin embargo, no está envuelto el incumplimiento de ninguna de las obligaciones expresadas en los arts. 1444 ó 1445 del Código Civil. En su consecuencia, nada de lo dispuesto en ellos puede servirnos de base para la determinación de si en este caso procede o no la rescisión del contrato. (1)

Empero, tenemos de un lado que el art. 1243 del Código Civil, ed. 1930, dispone que "Son rescindibles: . . . (5) cualesquiera otros (contratos) en que especialmente lo determine la ley" y que el art. 1077 del mismo código prescribe que:

"La facultad de resolver las obligaciones se entiende implícita en las recíprocas, para el caso de que uno de los obligados no cumpliere lo que le incumbe," y que "el perjudicado podrá escoger entre exigir el cumplimiento o la resolución de la obligación, con el resarcimiento de daños y abono de intereses en ambos casos. . . ."

Y del otro que el art. 1459, supra, provee que:

"El arrendador podrá desahuciar judicialmente al arrendatario por alguna de las causas siguientes:
"
"3. Infracción de cualquiera de las condiciones estipuladas en el contrato."

Así pues, nos encontramos con que de acuerdo con los preceptos enunciados, en adición a los contratos de cuya rescisión

---

(1) El precepto del art. 1446 no altera ni limita, sin embargo, la eficacia del art. 1459 de dicho código que fija las causas del desahucio. 10 Manresa, Código Civil Español, 5ta. ed., 1950, pág. 568.

habla taxativamente el art. 1243, hay otros que son rescindibles por haberlo así determinado especialmente la ley, como por ejemplo el de arrendamiento cuando no se cumplen por el arrendador o por el arrendatario las obligaciones expresadas en los arts. 1444 y 1445 del Código Civil([2])—Scaevola, Código Civil, vol. 24, primera parte, ed. 1952, pág. 540; Manresa, obra citada, vol. 8, ed. de 1950, pág. 552—y con que en las obligaciones recíprocas si uno de los obligados no cumpliere lo que le incumbe, la otra parte puede pedir su resolución.

En el contrato de arrendamiento aquí envuelto se estipuló de manera expresa que al arrendatario se le prohibía terminantemente tumbar las palmas de grano y los árboles frutales. "Terminantemente" significa "de manera terminante o concluyente" y, "terminante" quiere decir "claro, preciso, concluyente". Diccionario de la Lengua Española, Real Academia Española, décimoséptima ed., 1947, pág. 1211. El tribunal a quo concluyó que el demandado había tumbado árboles y palmas, que eran nuevas y estaban en estado de producción. Esa conclusión está justificada por la prueba. Se desprende asimismo de la prueba aducida que los árboles y palmas destruídos estaban cerca de la casa de vivienda y que su destrucción fué voluntaria, intencional. En su consecuencia, hubo un incumplimiento de una cláusula esencial y específica del contrato de arrendamiento. Siendo ese contrato uno con obligaciones recíprocas—véase el art. 1077, supra—tal incumplimiento da lugar a su resolución.

El caso de *Municipio v. Vidal*, 65 D.P.R. 370, discutido por el apelante en su alegato, es distinguible del presente. En él los esposos Vidal constituyeron a favor del Municipio de Ponce una servidumbre a perpetuidad para el tendido de los tubos del acueducto incluyendo, además, un derecho de paso a lo largo de la tubería. Como precio de la servidumbre el Municipio concedió a los esposos Vidal el derecho a tomar

---

([2]) También hay tratadistas que sostienen que entre los casos afirmativos de rescisión están las causas determinantes del desahucio. 6 Oyuelos, pág. 350; 5 Id. 463; 10 Manresa, Código Civil, 5ta. ed. 1950, pág. 567.

a perpetuidad 18,000 galones de agua cada veinticuatro horas, "siendo entendido que los dueños de las propiedades afectadas por la servidumbre tendrán el derecho de tomar mayor cantidad de agua por día para los mismos fines, pagando, desde luego, el excedente de agua de acuerdo con la tarifa que rija." Años más tarde el Municipio inició contra dichos esposos un pleito sobre rescisión de contrato, alegando que en violación del mismo los demandados conectaron al tubo matriz del acueducto cuatro acometidas y que mediante el uso de molinos y bombas venían utilizando diariamente 624,000 galones de agua en exceso de los 18,000 a que ascendía la concesión. En apelación resolvimos que "No todo incumplimiento de una obligación contractual da derecho a la acción resolutoria"— aclarando en la nota 3 que aparece al calce de la pág. 374, que "Los autores, la jurisprudencia y algunos códigos usan indistintamente los vocablos 'resolutoria' y 'rescisoria' "—y que "Para que la acción exista es preciso que la obligación incumplida tenga el carácter de recíproca." Dijimos también en esa opinión que "Existen, además, otras obligaciones que se incorporan a los contratos cuyo objeto es meramente completar y aclarar las estipulaciones de los contratantes, las cuales no constituyen el verdadero motivo para la celebración del contrato y se denominan obligaciones accesorias o complementarias", y que "El incumplimiento de estas obligaciones accesorias o complementarias dará lugar a una acción de daños y perjuicios o a cualquiera otra que justifiquen las circunstancias de cada caso, pero nunca a la acción resolutoria regulada por el art. 1077 del Código Civil, reservada exclusivamente para el caso del incumplimiento de las obligaciones recíprocas." Resolvimos finalmente que la obligación de los demandados de no usar el agua para otros fines que no fuesen los estipulados era una obligación accesoria o complementaria, y que por no ser recíproca no procedía la resolución del contrato. Nos ratificamos en lo allí resuelto. Véanse, además, a este respecto, la Revista General de Legislación y Jurisprudencia, tomo X, segunda serie, 1945, pág. 859, y Manresa, ob.

cit., tomo 8, vol. 1, pág. 354, donde, además, se dice a la pág. 361 "Que la acción resolutoria exige un verdadero y propio incumplimiento, el que en términos generales no es equivalente al mero retraso en el pago, . . . ." Aquí, no obstante, la situación es distinta, ya que éste es un caso en que se solicita por el arrendador la rescisión o resolución del contrato de arrendamiento, así como daños y perjuicios, por no haber cumplido el arrendatario una de las cláusulas de ese contrato.

De haberlo deseado, por la violación o incumplimiento mencionados el arrendador hubiera podido solicitar judicialmente el desahucio del arrendatario. Art. 1459 del Código Civil, ed. 1930, inciso 3.

Comentando el art. 1569 del Código Civil Español, igual al 1459 del nuestro, el ilustre tratadista Manresa, en el tomo 10 de su obra citada, nos dice a la pág. 647 que:

"Es y ha sido siempre obligatorio el cumplimiento de lo pactado lícitamente, y por esto se ha considerado y se considera como causa de desahucio la infracción o incumplimiento de *cualquiera* de las condiciones estipuladas en el contrato de arriendo: . . . 'La facultad de resolver las obligaciones se entiende implícita en las recíprocas para el caso de que uno de los obligados no cumpliere lo que le incumbe,' dice el art. 1,124 del Código Civil (1077 del nuestro) y *por medio del desahucio se resuelve o rescinde el contrato de arrendamiento* con un procedimiento breve y adecuado a la índole del asunto. . . . (Bastardillas nuestras.)

". . . . . . . . .

"La infracción del contrato a que se refiere la causa tercera del art. 1,569 del Código Civil (1459 del nuestro), al efecto de poder fundar en ella el arrendador la acción de desahucio contra el arrendatario, ha de ser realizada por dolo, culpa o cualquier negligencia de este último, . . ."

En este caso, como hemos dicho, la violación del contrato fué intencional.

También nos dice Manresa en su citada obra a la pág. 648 del tomo 10 que: "Tampoco es óbice al ejercicio del desahucio la existencia de una cláusula de promesa de venta [como la aquí envuelta] a favor del arrendatario," citando la Sentencia

del Tribunal Supremo de España de 17 de enero de 1924 (161 Jur. Civ. 130). Se recordará que, como ya hemos indicado, "Por medio del desahucio se resuelve o rescinde el contrato de arrendamiento", lo que dicho en otras palabras significa que toda acción de desahucio implica o lleva consigo la resolución o rescisión del contrato de arrendamiento preexistente. *Cf. Campos* v. *Tribl. Superior*, 75 D.P.R. 370, 381. No se cometió, por tanto, el primer error señalado.

En el párrafo 3 de sus conclusiones de hechos probados el tribunal a quo manifiesta "que el demandado Luis Ríos Flores tumbó y destruyó 27 palmas de yaguas, 4 palmas de coco, 5 árboles de aguacate, 7 árboles de pana, 5 árboles de chinas, 2 árboles de limón dulce, 3 árboles de higüera y una palma de *coyote* con el propósito de sembrar cañas de azúcar en dicho terreno." Por la destrucción de esos árboles y palmeras concedió al demandante en concepto de daños y perjuicios la suma de $464. Respecto al valor de ellos sólo declaró el propio demandante y su testimonio a ese efecto no fué contradicho en forma alguna. El tribunal a quo estuvo, por ende, justificado en considerar el mismo y en darle a los árboles destruídos el valor fijádole por el demandante.

Sin embargo, además de no haberse ofrecido prueba de clase alguna sobre la pérdida en el valor en el mercado de la finca arrendada, razón por la cual no procedería la concesión de daños por tal motivo, nuestro criterio es que en un caso como éste no se pueden adjudicar daños dos veces por el mismo concepto, es decir, por el valor de los árboles destruídos y por la depreciación en el valor de la finca con motivo de la destrucción de los mismos. Por tanto, el tribunal a quo erró al conceder la suma de $700 por esa supuesta pérdida.

La imposición de costas a la parte perdidosa es imperativa. Ley núm. 411 de 11 de mayo de 1951 (pág. 1095); *Colón* v. *Asociación Cooperativa Lafayette*, 67 D.P.R. 271. Además, de conformidad con esa ley, a la parte perdidosa se le impondrá el pago de honorarios de abogado si ha procedido con temeridad. Debe presumirse que al imponerlos el tri-

bunal a quo fué de opinión que el demandado había sido temerario—*Font* v. *Pastrana*, 73 D.P.R. 247, 252—y no podemos decir que la suma concedida por tal concepto sea irrazonable.

*La sentencia apelada será modificada en el sentido de reducir la cuantía total de los daños y perjuicios a $464, y así modificada la misma será confirmada.*

Los Sres. Jueces Presidente Snyder y Asociados Ortiz y Belaval disintieron.