SYLVIA ALVAREZ GARCIA
Demandante-Apelada

v.

GELABERTO ARROYO RUIZ
Demandado-Apelante

MARIA TERESA LOPEZ TORRES
Interventora

Núm. KLAN-95-01041

San Juan, Puerto Rico, a 19 de agosto de 1998

Panel integrado por su Presidenta, Jueza Fiol Matta,
la Jueza Rodríguez de Oronoz y el Juez Gierbolini

Fiol Matta, Jueza Ponente

## TEXTO COMPLETO DE LA SENTENCIA

Se nos solicita la revocación de una sentencia dictada por el Tribunal de Primera Instancia, Sala Superior de Bayamón, sobre división de comunidad de bienes. En la alternativa, se solicita que modifiquemos la sentencia, aplicando el Artículo 1326 del Código Civil y ordenemos la celebración de un nuevo juicio.

En la sentencia se determinó la existencia de una comunidad de bienes entre el apelante Gelaberto Arroyo Ruiz y la apelada Sylvia Alvarez García. En consecuencia, se reconoció a la parte demandante el derecho a participar por mitad en todos los bienes en controversia. También se le concedió un crédito con relación a bienes muebles previamente adjudicados al señor Arroyo Ruiz y se impuso el pago de costas y honorarios de abogado a la demandada. Examinado el expediente a la luz del derecho aplicable, modificamos la sentencia apelada y así modificada se confirma. --

### I

El 13 de diciembre de 1991, la apelada Sylvia Alvarez García presentó demanda contra el Sr. Gelaberto Arroyo Ruiz sobre división de comunidad de bienes. Alega que para el año 1976 ella y el demandado comenzaron a vivir bajo el mismo techo como marido y mujer, siendo soltera ella y casado él con la Sra. María Teresa López. La relación extramarital comenzó en mayo de 1972, mientras ambos residían bajo techos separados. En la demanda, la señora Alvarez García expuso que al momento de comenzar su relación concubinaria las partes no tenían bienes de clase alguna y que

mediante el esfuerzo y trabajo de ambos fueron adquiriendo bienes, cuya descripción y valoración se hicieron constar. Entre estos, incluyó un inmueble sito en la Urbanización Ponce de León y varios bienes muebles. La señora Alvarez García solicitó al tribunal de instancia que ordenara la partición de los bienes adquiridos por la pareja durante su relación consensual y que condenara al demandado al pago de las costas y honorarios de abogado.

Así las cosas, la Sra. María Teresa López Torres compareció el 6 de febrero de 1992, mediante demanda de intervención. La señora López alegó en su demanda que tenía derecho a una participación ganancial sobre los bienes descritos en la demanda original.

El 10 de febrero de 1992, el señor Arroyo Ruiz contestó la demanda aceptando la relación extramarital con la señora Alvarez García a partir de 1972 y la convivencia con ésta a partir del año 1976. Negó las demás alegaciones de la demanda. También exigió que se separasen de la alegada comunidad conyugal los bienes que pertenecían a la Sociedad Legal de Gananciales, aún no disuelta, habida entre él y la señora López Torres y a entidades corporativas que nada tuvieron que ver con la relación extramarital.

En el Informe Sobre Conferencia Preliminar Entre Abogados preparado en anticipación de la conferencia con antelación al juicio señalada por el Tribunal, las partes estipularon, entre otras, que no estaba en controversia el hecho de *"[q]ue la demandante y el demandado convivieron bajo el mismo techo como marido y mujer y se estableció una comunidad de bienes"* (página 5). Además, como parte de su teoría, el demandado-apelante reiteró *"que aceptamos que entre la parte demandante y el demandado se estableció una comunidad conyugal"* (página 3).

La vista en su fondo comenzó el 28 de abril de 1993 y por diversas razones no continuó hasta el 7, 8 y 9 de diciembre de 1994. El desfile de prueba concluyó el 22 de mayo de 1995.

El 16 de noviembre de 1994, el señor Arroyo Ruiz solicitó autorización para enmendar el informe sobre conferencia preliminar antes mencionado. El propósito fue incluir como testigo de la parte demandada a la persona que vendió el inmueble de la Urbanización Ponce de León al demandado, Sr. Joaquín Hernández Rosado. La parte demandante se opuso a la moción y el Tribunal declaró sin lugar la solicitud. El testigo se proponía declarar en corte que el pronto pago que recibió del señor Arroyo Ruiz fue de $25,000 en lugar de los $15,000 que alegaba la parte demandante. La declaración de este testigo quedó como evidencia ofrecida y no admitida.

En su sentencia, el Tribunal expone que después de analizar la evidencia sometida y de darle la credibilidad que le merecieron los testigos, llegó a las siguientes determinaciones de hechos:

*"Don Gelaberto Arroyo Ruiz y María Teresa López Torres contrajeron matrimonio en la ciudad de Nueva York el 29 de marzo de 1953 y se divorciaron en Puerto Rico por la causal de separación el 16 de noviembre de 1979.*

*Según consta en la escritura de compraventa Núm. 12, otorgada en San Juan, Puerto Rico, el 26 de abril de 1977, ante el notario Alberto Pagán Pagán, el demandado adquirió una propiedad en la Calle 25, Número 261 de la Urbanización Ponce de León en Guaynabo, por el precio de $24,800.68 de cuya suma se pagaron $15,000.00 en efectivo y se asumió un balance hipotecario de $9,800.68 que gravaba el inmueble. Para la adquisición de dicha propiedad la parte demandante aportó la cantidad de $8,000.00 y el demandado aportó la cantidad de $7,000.00.*

*En la misma fecha de adquisición el peticionario otorgó dos pagarés de naturaleza hipotecaria por la cantidad de $20,000.00 y $15,000.00 respectivamente. Posteriormente el pagaré por la cantidad de $20,000 fue entregado a Don Luis Álvarez García en prenda, como garantía de un préstamo de $15,000.00.*

*El señor Arroyo Ruiz continuó viviendo en la Urbanización Parkville, junto a su esposa, hasta finales del 1979, cuando se muda con la recurrida a la residencia en cuestión.*

*Durante la relación entre la señora Alvarez y el señor Arroyo Ruiz, los pagos de la hipoteca*

*fueron efectuados por la demandante contra su cuenta personal número 0280716914 del Banco Popular de Puerto Rico.*

*Todos los bienes muebles detallados en el Anejo "A" de la demanda fueron adquiridos por la parte demandante y el demandado con posterioridad a la disolución del vínculo matrimonial que existió entre el apelante Arroyo Ruiz y la interventora López Torres.*

*Durante la relación, la demandante generaba ingresos de distintas fuentes incluyendo la venta de casas y apartamentos, abanicos, ropa y prendas. También proveía transportación escolar a estudiantes y administraba los negocios de arrendamiento de su padre. La demandante utilizaba sus ingresos para beneficio de la comunidad de bienes existente entre ella y el demandado.*

*La recurrida también brindaba mantenimiento a la residencia donde vivía con el demandado, atendía al recurrente en sus necesidades personales, proveía los servicios propios del hogar y facilitaba la disponibilidad del demandado para generar ingresos."*

*Ante estos hechos, el Tribunal de Primera Instancia declaró con lugar la demanda. Reconoció el derecho de la parte demandante a participar, por mitad, en todos los bienes descritos en el anejo "A" de la demanda. Además determinó que la Sociedad Legal de Gananciales compuesta por el demandado y la interventora tenía derecho a participar por mitad, junto a la demandante, de la propiedad inmueble ubicada en la Urbanización Ponce de León. Se le concedió también a la recurrida un crédito por la cantidad de $9,500.00 por los bienes muebles previamente adjudicados al demandado como anticipo a su participación en la comunidad con la demandante. Por otro lado, se estableció la validez del pagaré de $20,000.00 dado en prenda por una obligación de $15,000.00 y se impuso el reembolso de las costas y el pago de la suma de $5,000.00 en concepto de honorarios de abogado."*

En apelación, el señor Arroyo Ruiz alega la comisión de dieciocho errores por el Tribunal de Primera Instancia, la mayoría de ellos referente a la apreciación de la prueba. Los discutiremos en conjunto a continuación.

El apelante alega que en el juicio no desfiló prueba alguna que demostrara que la demandante facilitaba la disponibilidad del demandado para generar ingresos para beneficio de una comunidad establecida entre ambos. También alega que el tribunal erró al determinar que la señora Alvarez García brindó servicios y aportaciones económicas sustanciales para beneficio de la comunidad de bienes, incluyendo pagar la hipoteca, luz y agua del inmueble en controversia, usar de sus ingresos para beneficio de la comunidad y proveer mantenimiento al inmueble. Expone que fue error concluir que la demandante contribuyó a aumentar el capital del demandado durante el tiempo que mantuvieron su relación, así como la adquisición de los bienes muebles e inmuebles cuya división solicitó. En resumidas cuentas, niega que entre la señora Alvarez García y él se hubiera constituido una comunidad de bienes por pacto implícito, por lo que argumenta que el tribunal de instancia también erró al entender lo contrario.

Tras examinar cuidadosamente las transcripciones de las vistas celebradas ante el Tribunal de Primera Instancia, hemos llegado a la conclusión de que el apelante no tiene razón. Durante la vista desfiló prueba demostrativa de que la demandante facilitaba la disponibilidad del demandado para generar ingresos. La prueba se presentó a través del testimonio de la señora Alvarez García, testimonio que no fue refutado por la parte demandada. La apelada declaró haberse encargado del mantenimiento de la casa en la que residía con el demandado. También declaró realizar las labores de cuidado y preparación de alimentos para sus hijos y el demandado. Por otro lado, irrespectivamente de a quién pertenecía el dinero con el que se pagaba la hipoteca, luz y el agua, las gestiones de pago las realizaba la señora Alvarez García. Además, según testificó el notario autorizante, licenciado Pagán Pagán, fue la recurrida quien se encargó de realizar todas las gestiones necesarias para preparar la escrituras de compraventa de la propiedad en litigio.

La apelada también testificó en corte haber ayudado al recurrente a reorganizar las cuentas por cobrar del negocio del peticionario. Esto lo hizo sin recibir paga por los primeros tres meses de trabajo, dada la difícil situación económica prevaleciente luego de que ocurriera un fuego en dicho

negocio en 1982.

Resolvemos que la conclusión del tribunal de instancia a los efectos de que la demandante facilitaba la disponibilidad del demandado para generar ingresos está respaldada por prueba suficiente creída por el Tribunal. Evidentemente el tribunal le dio entero crédito al testimonio de la parte recurrida con relación a las gestiones que realizaba en nombre y a beneficio de la parte recurrente. Este Tribunal no reemplazará la apreciación del tribunal de primera instancia en lo que se refiere a la credibilidad de los testigos. *Sociedad de Gananciales v. Sociedad de Gananciales,* 104 D.P.R. 50 (1975).

Para refutar la conclusión del tribunal de que los servicios y aportaciones económicas que la señora Alvarez García brindó a la comunidad contribuyeron a aumentar el capital del demandado, éste expone que antes de conocer a la recurrida, era un hombre acaudalado. Su negocio contaba con ingresos de cerca de cien mil dólares anuales, luego de deducir los gastos. Sin embargo, su situación económica empeoró significativamente al finalizar la relación concubinaria. Declaró tener deudas de sobre $300,000, con ingresos de $450.00 mensuales del Seguro Social.

Por otra parte, alega el señor Arroyo Ruiz que antes de conocer a la apelada y durante la relación consensual entre ellos, la situación económica de ésta era precaria. Estimó el ingreso mensual de la señora Alvarez García al comienzo de su relación en $623.00 y tan sólo en $82.00 para el 1977. Se basó para ello en un documento notarizado que la señora Alvarez García presentó en una acción de Alimentos Recíprocos instada por ella contra su anterior esposo y aduce en apelación que el tribunal de instancia erró al no darle valor probatorio a dicho documento.

Por el contrario, el tribunal sentenciador encontró que la apelada generaba ingresos de diferentes fuentes incluyendo la venta de casas, abanicos, ropa, prendas y misceláneas. Administraba los negocios de arrendamiento de su padre y porveía transportación escolar. También que para la adquisición de la propiedad de la Urbanización Ponce de León la parte apelada aportó la cantidad de $8,000.00. Además que los pagos de la hipoteca, luz y agua de la residencia fueron efectuados por la apelada.

La transcripción sostiene dicha determinación. La señora Alvarez García enumeró y describió todas sus fuentes de ingresos. Estimó sus ingresos mensuales en $400 a $600 mensuales de su trabajo en Hitt y Zalduondo; de la venta de ropa, collares y misceláneas recibía $2,000.00 a $3,000.00 anuales. Por administrar las propiedades de su señor padre recibía de $400.00 a 450.00 mensuales y del negocio de transportación $200.00 semanales. Cabe señalar que el propio demandado-apelante, al contestar la demanda, alegó que la señora Alvarez García percibía ingresos como administradora de las propiedades de su padre.

En cuanto a lo declarado en la acción de alimentos recíprocos, la apelada explicó y el tribunal creyó, que no había incluido todas sus fuentes de ingreso en el documento notarizado. Testificó que el documento no fue preparado por ella y que ella se limitó a firmarlo, sin intención alguna de mentir ni de ocultar información. El tribunal de instancia tuvo ante sí las razones que llevaron a la señora Alvarez a declarar como lo hizo en el documento notarizado y decidió darle entero crédito a su explicación, entendiendo que el documento constituia prueba incompleta. No nos convence el apelante de que errara al así hacerlo.

Por otro lado, fueron materia de estipulación los cheques cancelados en pago de los gastos del hogar por la cuenta de banco. El apelante alega que le daba la cantidad de $300.00 mensuales a la señora Alvarez para que ella se ocupara de pagar las cuentas del hogar. No obstante el Tribunal de Instancia le dio crédito al testimonio de la apelada al efecto de que el dinero depositado en su cuenta provenía de su trabajo.

La parte apelante alega que la señora Alvarez García no aportó dinero alguno para la compra de la residencia de la pareja y que la propiedad se adquirió por un precio mayor a los $24,000 alegados por ella. Según su testimonio, fue él quien aportó la totalidad del pronto, que dijo ser por la cantidad de $25,000.00, entregada personalmente al vendedor, Joaquín Hernández. El testimonio del apelante en cuanto al precio de la propiedad no encuentra apoyo en la Escritura Pública que él mismo suscribió al

momento de la compraventa, por lo que de ser cierta su contención, no sólo mintió en la escritura en cuanto a su estado civil sino también en cuanto al valor de la casa. La versión del apelante en cuanto al valor de la casa no fue aceptada por el tribunal de instancia.

Por su parte, la apelada arguye que el testimonio del notario autorizante, licenciado Pagán Pagán, fue a los efectos de que el precio de la propiedad fue de $24,800.68, según surge de la Escritura Pública Núm. 12, sobre Compraventa Asumiendo Hipoteca, del 26 de abril de 1977. La escritura expresa que el precio de compraventa se satisfizo mediante un pago de $15,000.00 y la asunción del balance de la hipoteca que grayaba la propiedad de $9,800.68. Surgió del testimonio de la apelada que ella aportó la cantidad de $8,000.00 y el demandado $7,000.00. Explicó la señora Alvarez García que su aportación provino de $3,000.00 que le cedió su padre y de $5,000.00 que tenía ahorrados. Hemos verificado que el testimonio del licenciado Pagán contradice la contención de que la señora Alvarez García no aportó dinero en la transacción de compra del inmueble. También testificó el padre de la apelada, Sr. Luis Alvarez García, al efecto de que su hija le pidió $3,000.00 para comprar una casa en 1977.

Las transcripciones también revelan que la única prueba en cuanto a la próspera situación económica del apelante, antes y durante su relación con la apelada, es su propio testimonio. Es evidente que el Tribunal concedió entera credibilidad al testimonio de la señora Alvarez García sobre sus fuentes de ingreso. Por otro lado, no vemos qué relación pueda tener la situación económica actual del apelante con los servicios y aportaciones que pudo haber hecho la señora Alvarez dentro de la relación concubinaria, máxime cuando la propia prueba presentada por el señor Arroyo Ruiz indica que su negocio sufrió problemas económicos tras el fuego ocurrido en el 1982.

El apelante argumenta que al comenzar a convivir con la apelada no hubo un pacto expreso sobre cómo se iba a administrar la relación concubinaria y que de lo declarado por la demandante en juicio no se puede inferir que hubo un pacto implícito de comunidad de bienes. Como prueba de la inexistencia de una comunidad de bienes argumenta, no sólo su supuesta condición acaudalada y los problemas económicos de la apelante al inicio de la relación, sino que ambos mantuvieron sus ingresos en cuentas separadas. Además, alega que la demandante cobraba por su trabajo en el negocio del demandante y que cuando a petición de la señora Alvarez García, el padre de ésta le prestó al apelante $15,000, retuvo un pagaré por $20,000 como garantía de la deuda. Según el apelante, esto revela que entre la señora Alvarez García y él nunca existió un pacto implícito de constituir una comunidad de bienes. No tiene razón. No siendo la señora Alvarez García la acreedora, no erró el tribunal al no dar ese alcance a la entrega del pagaré en garantía del pago de la deuda.

El apelante aduce, además, que él era el único dueño del inmueble y que la apelada así lo reconoció en el documento de exoneración contributiva firmado por ella, bajo Juramento. Por eso, plantea que el tribunal erró al descartar el valor probatorio de ese documento, en el cual se indica que el único y exclusivo propietario de dicho inmueble era Gelaberto Arroyo Ruiz en 100% y que la fecha de ocupación de la propiedad fue en 1980. Nuevamente, estamos ante la apreciación del juzgador de instancia en cuanto al peso que debe tener dicha prueba en el contexto de las demás pruebas recibidas. Habiéndose recibido otra prueba en cuanto a la titularidad y creída ésta por el tribunal, resolvemos que el documento de solicitud de exoneración contributiva no es suficiente por sí sólo, para sostener la tesis del peticionario de que él es el único dueño de la propiedad.

El Tribunal Supremo de Puerto Rico ha reconocido el interés propietario de los concubinos con respecto a los bienes adquiridos o que hayan incrementado de valor, mientras la relación está vigente, como resultado del esfuerzo, labor y trabajo aportados conjuntamente. Este interés propietario surge bajo cualquiera de las siguientes alternativas: (1) como pacto expresos (2) como pacto implícito que se desprende espontáneamente de la relación humana y económica existente entre las partes durante el concubinato, y (3) como acto justiciero para evitar el enriquecimiento injusto. *Ortiz De Jesús v. Vázquez Cotto*, 119 D.P.R. 547 (1987). La jurisprudencia ha descrito el pacto implícito como aquella conducta o relación humana y económica que demuestra que la pareja se obligó implícitamente a aportar cada uno bienes, esfuerzo y trabajo para beneficio común. *Caraballo Ramírez v. Manuela Acosta*, 104 D.P.R. 474 (1975).

En este caso, la pareja sostuvo relaciones durante quince años, de los cuales aproximadamente

once vivieron bajo el mismo techo. No nos persuaden los argumentos del apelante en cuanto a que por su privilegiada situación económica, en contraposición a la supuestamente precaria situación de la recurrida, deba inferirse que la parte apelada no aportó a la relación de manera que quedara configurada una comunidad por pacto implícito.

La apelada alega que la existencia de la comunidad de bienes fue estipulada en el Informe de Conferencia Preliminar entre Abogados, por lo que el apelante no podía cuestionarlo durante el juicio. Sea como fuere, como hemos visto, hay en el expediente del caso suficiente evidencia para inferir, como lo hizo la sala sentenciadora, que la apelada brindó servicios y aportaciones económicas sustanciales para beneficio de la comunidad y que contribuyó a aumentar el capital del apelante durante el tiempo que mantuvieron su relación. Véase *Brea v. Pardo,* 113 D.P.R. 217 (1982).

El señor Arroyo Ruiz también alega como error que el tribunal no le permitiera incluir a Joaquín Hernández como testigo de prueba directa. El señor Hernández, según expone, fue el vendedor del inmueble en controversia. El apelante alega que trató de localizar al señor Hernández a tiempo para incluirlo en el Informe sobre Conferencia Preliminar Entre Abogados, pero éste residía en los Estados Unidos y se desconocía su dirección. No es hasta que el señor Hernández regresa a vivir a Puerto Rico que pudo localizarlo. El 1 de noviembre de 1994, el señor Hernández prestó declaración jurada en la que indica que el pronto pago de la residencia fue de $25,000.00 en lugar de los $15,000.00 que alega la apelada.

El apelante entiende que de haberse permitido el testimonio del señor Hernández, *"la conclusión del Tribunal al efecto de que la demandante aportó la suma de $8,000.00 como pronto para la adquisición del inmueble no podría sostenerse".* Además, partiendo de la premisa de que ella hubiera aportado $8,000.00 al pronto de la casa, sus porcientos de participación en el inmueble variarían, pues la de ella sería de 32% y la de él, 68%.

La realidad es que el apelante tenía la obligación de consignar en el Informe todos los testigos que contemplaba utilizar. Dicha obligación surge respecto a todos los testigos, inclusive los de refutación. Véase lo resuelto por este Tribunal en *Héctor López Acevedo v. Budget Rent a Car y ABC Insurance Co.,* sentencia del 24 de septiembre de 1996, Núm. KLCE-96-00774, (Amadeo Murga, Juez Ponente). Esta omisión de consignar el nombre de un testigo no siempre acarrea la exclusión de su testimonio en el juicio; no obstante, el tribunal tiene considerable discreción para excluir dicha prueba como sanción por la omisión. Claro está, este ejercicio de discreción tiene que darse dentro de un marco de razonabilidad que tome en cuenta que el propósito cardinal de un juicio es descubrir la verdad y hacer justicia.

No se nos ha demostrado que al excluir el testimonio del señor Hernández, la sala sentenciadora actuó de forma tan irrazonable que incurrió en un abuso de discreción. Por otra parte, visto el contenido de dicho testimonio, concluimos que el mismo no cambiaría la adjudicación de los hechos y la apreciación del tribunal en cuanto a la credibilidad de los testigos. No habiéndose demostrado un manifiesto abuso de la discreción del tribunal de instancia, debemos confirmar.

Tampoco erró el tribunal, contrario a lo que alega el señor Arroyo Ruiz, al no permitirle ofrecer prueba sobre el precio del inmueble en controversia a la fecha en que fue adquirido. Con esa prueba, el apelante entendía que el Tribunal podía evaluar si el precio de la venta era $24,800.00, según reza la escritura y afirma la apelada, o $34,800.00, como él alega. El apelante pretendió presentar una certificación registral que indicaba que el señor Joaquín Hernández adquirió el inmueble en 1969 por el precio de $24,000.00. Alega el señor Arroyo Ruiz que si el tribunal le hubiese permitido presentar prueba sobre cuánto valía el inmueble en la fecha en que fue adquirido no podría prevalecer la contención de la señora Alvarez García de que se adquirió por $24,000.00, ya que ese era el precio que el señor Hernández había pagado ocho años atrás.

Para resolver que el precio de compra fue de $24,000, en lugar de $34,800, el tribunal consideró los testimonios de la apelada y del licenciado Pagán Pagán y la escritura de adquisición de la propiedad, que fue sometida por estipulación. No abusó de su discreción al no permitir otra prueba sobre el valor de la propiedad al momento de su adquisición. Además, consta en las transcripciones del caso que el inmueble estaba en malas condiciones y necesitaba varias reparaciones al momento de

la compra, por lo que el testimonio de la señora Alvarez García, del licenciado Pagán Pagán y lo consignado en la escritura no sería irrazonable, aun cuando el precio fuera el mismo que el de la compraventa anterior.

El apelante entiende que la determinación del Tribunal de otorgar un crédito a la parte recurrida por la cantidad de $9,500.00 sobre los bienes muebles (vehículos Cadillac 1982, Jeep 1984 y Volkswagen 1971) adjudicados previamente al demandado, es incorrecta. Tiene razón. La suma de $9,500 es el valor de tasación aceptado por ambas partes para los mencionados vehículos. Habiéndose concluido que los vehículos pertenecían a la comunidad de bienes habida entre el demandado y la demandante, la Jueza de Primera Instancia reconoció en su sentencia que la parte recurrida tenía derecho a participar por mitad en todos los bienes descritos en el Anejo A de la demanda, que incluye los vehículos mencionados. Por tanto, modificamos la sentencia para determinar que la señora Alvarez García será acreedora de un crédito contra el demandado por la cantidad de $4,750, la justa mitad del valor de los bienes previamente cedidos al demandado.

Por último, el peticionario nos solicita que reconsideremos los honorarios de abogados fijados por el tribunal de primera instancia. La imposición de honorarios de abogado por temeridad está reglada en el inciso (d) de la Regla 44.1 de las de Procedimiento Civil.

Regla 44.1, Ap. III (1983).

Este artículo consagra el principio general de que *"en caso que cualquier parte o su abogado hayan procedido con temeridad o frivolidad, el tribunal deberá imponerle en su sentencia al responsable, el pago de una suma por concepto de honorarios de abogado que el tribunal entienda correspondan a tal conducta"*. El concepto de temeridad no está definido en la Regla 44.1(d). No obstante, la jurisprudencia del Tribunal Supremo de Puerto Rico aclara que la temeridad consiste en *"[u]na actitud que se proyecta sobre el procedimiento y que afecta el buen funcionamiento y la administración de la justicia. También sujeta al litigante inocente a la ordalía del proceso judicial y lo expone a gastos innecesarios y la contratación de servicios profesionales, incluyendo abogados, con el gravamen a veces exhorbitante para el peculio."* H. Sánchez Martínez, *"Rebelde sin Costas",* Año 4 (Núm. 2), Boletín Judicial (abril-junio 1982, citado en *Velázquez Ortiz v. U.P.R.,* 128 D.P.R. 234, 237 (1991).

Se ha resuelto que la imposición de honorarios de abogado es discrecional, pero una vez determinada la temeridad, su imposición es mandatoria. *Raluan Corp. v. Feliciano,* 111 D.P.R. 598 (1981). Por otra parte, la condena al pago de honorarios de abogado es indicativa de que el tribunal sentenciador consideró que la parte perdidosa en el pleito fue temeraria. *Vélez Santiago v. Ríos Flores,* 76 D.P.R. 860 (1954). La existencia de temeridad es una determinación discrecional del tribunal de instancia, cuya revocación requiere una demostración de que hubo abuso de esa discreción. *Ramírez Anglada v. Club Cala de Palmas,* 123 D.P.R. 339 (1989).

El expediente demuestra que el tribunal no excedió su discreción al entender que la parte demandada incurrió en conducta temeraria. La jurisprudencia sobre el tema de comunidad de bienes en relaciones extramaritales es abundante y apoya claramente la reclamación de la apelada. La actitud del recurrente de aceptar unos hechos mediante estipulaciones y luego impugnar las mismas, así como la formulación de alegaciones evidentemente frívolas, hizo necesario un litigio que se pudo evitar y obligó a la parte demandante a incurrir en gastos y molestias innecesarias.

En cuanto a la cuantía de honorarios de abogado por temeridad, los criterios o factores a sopesar al imponerla son: el tiempo invertido; los esfuerzos y la actividad profesional que hayan tenido que desplegarse; la habilidad y reputación de los abogados envueltos. *Velázquez Ortiz v. U.P.R., supra.* No se nos ha demostrado que el tribunal se excediera en su apreciación de estos factores en el caso que nos ocupa.

Por las razones expresadas se confirma la sentencia apelada, modificando la determinación del tribunal sobre el crédito por la venta de los bienes muebles, para aclarar que la demandante-apelada es acreedora de un crédito por $4,755 sobre los bienes muebles enumerados en el Anejo A de la demanda, cuya venta fue autorizada por el Tribunal de Primera Instancia.

Así lo acordó y manda el Tribunal y lo certifica la Secretaria General.

Aida Ileana Oquendo Graulau
Secretaria General