ROBERTO RAMÍREZ ANGLADA, demandante y recurrido, *v.* CLUB CALA DE PALMAS, demandado y peticionario.

*Número:* CE-88-217 *Resuelto:* 21 de febrero de 1989

*Jorge Calero Blanco*, de *Ledesma, Palou & Miranda*, abogado del peticionario; *Efraín Aponte Berdecía*, abogado del recurrido.

EL JUEZ ASOCIADO SEÑOR NEGRÓN GARCÍA emitió la opinión del Tribunal.

A solicitud del Club Cala de Palmas (Club Cala) examinamos la juridicidad de la sentencia del Tribunal Superior, Sala de San Juan (Hon. Ángel G. Hermida, Juez), que revocó una resolución del Departamento de Asuntos del Consumidor (D.A.C.O.) desestimatoria de una querella presentada por Roberto L. Ramírez Anglada. Expongamos los hechos.

I

El 7 de marzo de 1982 Ramírez Anglada suscribió con Club Cala un contrato —en inglés denominado *Guaranteed Vacation Membership Agreement*— mediante el cual se le aseguraba la ocupación de una villa (*Two Bedroom-Den Villa*) durante una semana específica, por un período de veinticinco (25) años. El precio convenido fue de $6,200, el cual originalmente Ramírez Anglada pagaría mediante un plan de pagos diferidos, pero que posteriormente decidió satisfacer en dos plazos, uno de $1,600 y el otro de $4,600. Según la Cláusula IV, se comprometió a pagar una cuota anual (*annual club dues*) de $200 por los primeros dos (2) años, cifra que podría aumentarse o reducirse posteriormente, según fuere necesario, para cubrir los costos de operación de las

facilidades del club y los gastos necesarios para proveer servicios incidentales por el uso de las mismas.(1)

Así las cosas, al tercer año, Club Cala le requirió a Ramírez Anglada, al amparo de esa cláusula y mediante carta de 23 de agosto de 1984, el pago de $350 por concepto de su cuota anual. Observamos que esa suma representa casi el doble de la fijada inicialmente en el acuerdo para los primeros dos (2) años. El 11 de septiembre de 1984 Club Cala le envió otra comunicación a Ramírez Anglada indicándole que, a tenor con lo dispuesto en la Cláusula IX del contrato, se encontraba en mora (*default*). Le señaló, además, que de no pagar su cuota en un período de treinta (30) días, procedería a dar por terminado el contrato (*terminated*) y a retener

---

(1) En su totalidad dispone:

"IV. ANNUAL CLUB DUES

"a) Member shall pay Annual Club Dues in U.S. Funds to Palmas or its designee.

"b) The Annual Club Dues shall cover the actual cost of operations of the accomodations plus all costs required to provide services incidental to the use of the accommodations; including, but not limited to the following: Taxes—hotel occupancy tax, real property tax, if any, and all other taxes applicable to the accomodations, land lease, insurance and general assessments; electricity, water and sewerage, telephone and television charges; fees and assessments; recreational facilities; building maintenance and security personnel; weekly maid service; linen, towels, flatwear and kitchen wear; repair and replacement of furniture and appliances; repainting and refurbishing of the accommodations as required; accounting and other professional fees; Palmas Homeowners Association assessments and Harbourside Condominium Regime Fees; and Management of the Club Cala equal *to no more than 10% of the annual dues*.

"c) Members shall pay the Annual Club Dues in advance, as set forth herein on or before April 30th of each year during the term of this Agreement. Annual Club Dues not paid on or before the expiration of thirty (30) days from the specified due date shall be increased by the maximum interest rate permitted by law or ten (10%) percent, whichever is higher.

"d) The Annual Club Dues may be increased or decreased as *might be required due to changes in the cost of operations and provision of services incidental to the use of the accommodations*.

"e) Annual Club Dues are due and payable during this term of the Agreement irrespective of usage of the accommodation by the Member." (Énfasis suplido.) Apéndice, pág. 2.

todo lo pagado por él anteriormente.(2) Contestó ambas cartas el licenciado Aponte Berdecía, representante legal de Ramírez Anglada. En esencia, éste expresó que su cliente entendía que el aumento decretado era irrazonable. Indicó que para poder asesorarle adecuadamente necesitaba examinar varios documentos; entre ellos, los estados financieros anuales, los costos operacionales y *cualquier otra información que Club Cala estimara pertinente.*(3)

En su contestación, Club Cala informó que era demasiado oneroso *producir* todos los documentos requeridos, y que algunos de ellos contenían información confidencial. No obstante, indicó que estaba disponible para reunirse y proveer *cualquier información no confidencial* sobre dicho asunto. Ante tal invitación, el licenciado Aponte Berdecía designó a Melton Díaz como la persona que realizaría tal gestión. Club Cala reiteró entonces su disponibilidad para reunirse, siempre y cuando no fuera para requerir lo anteriormente denegado. Posteriormente, Díaz informó que visitaría las oficinas de Club Cala el 21 de noviembre de 1985 a las

---

(2) Esta cláusula lee como sigue:

"IX. DEFAULT

"In the event the Member becomes delinquent for thirty (30) days in the payment of any sum due under this Agreement to Palmas, its designee or any lending institution financing this Agreement the Member shall be *in default. No Member in default may use his Guaranteed Vacation Membership.* If the Member fails to bring his account current within thirty (30) days after notice of default, *Palmas,* or its designee *will have the right to pursue such remedies as it deems appropriate to collect the amounts due and/or to terminate the Agreement.* So long as default continues, *the right to terminate* and the right to pursue other remedies *may be exercised at any time after* the 30th day following the giving of notice of default. In the event of termination, Palmas or its designee will have the right to retain all sums paid hereunder as liquidated and agreed damages and to resell the Member's Guaranteed Vacation Membership without any *reimbursement to the Member* in addition to pursuing any other rights or remedy it may have in law or equity." (Énfasis suplido.) Apéndice, pág. 2.

(3) Específicamente solicitó examinar: (1) los estados financieros anuales; (2) los costos de operación; (3) la lista de empleados y salarios pagados; (4) la lista de miembros y sus respectivas cuotas, y (5) cualquier otra información que estimara pertinente.

10:30 A.M. Así lo hizo. Sin embargo, el día señalado, sin concederle entrevista, le informaron que *no le podían suministrar información de clase alguna.*

Como resultado de esta controversia, Ramírez Anglada no pudo disfrutar de su plan vacacional, puesto que el Club Cala no le permitió el uso de tales facilidades.

Ramírez Anglada presentó ante D.A.C.O. una querella contra Club Cala. En ella impugnó la legalidad del contrato y la razonabilidad de los cargos anuales. Previa vista, D.A.C.O. desestimó la querella. Concluyó, como cuestión de derecho, que Club Cala había cumplido todas sus obligaciones y el cargo anual de $350 era razonable y conforme con el contrato.

Inconforme, Ramírez Anglada acudió ante el Tribunal Superior, Sala de San Juan. Oportunamente dicho foro revocó. En su sentencia ordenó al Club Cala devolverle la suma de $5,704 —equivalente al $^{23}\!/\!_{25}$ del pago original de $6,200— con intereses legales desde la fecha en que se canceló el contrato, aparte de la suma de $750 por honorarios de abogado.[4] La ilustrada sala de instancia fundamentó su decisión en que Club Cala incumplió con sus obligaciones contractuales al negarse a dar información que justificara el aumento de la cuota anual. Por lo tanto, concluyó que procedía

---

[4] Resulta interesante destacar los vaivenes en las posiciones asumidas por el Departamento de Asuntos del Consumidor (D.A.C.O.) respecto de su propia resolución.

En su *primera comparecencia* ante el tribunal, D.A.C.O. solicitó la revocación de su resolución. Alegó, entre otros fundamentos, que Club Cala incumplió con el contrato al negarse a detallar, describir e informar a Ramírez Anglada cómo se fijaban y distribuían los costos. Adujo, además, que no fue hasta el día de la vista cuando sometió cierta prueba.

Posteriormente, en su *segunda comparecencia*, D.A.C.O. procedió a dar marcha atrás. Alegó que el abogado que presentó el escrito no entendió adecuadamente las instrucciones que se le dieron, que no apoyaba la revocación de su propia resolución y mucho menos la resolución del contrato.

Finalmente, el 1ro de diciembre de 1987, informó al tribunal que "la revocación de la Resolución y Orden del [D.A.C.O.] en este caso no es cosa que nos quite el sueño. Lo importante es que se haga justicia". Apéndice, pág. 75.

la devolución del dinero anteriormente pagado por los años en que Ramírez Anglada no había disfrutado de la villa. Al reafirmarse en reconsideración expresó que, aunque el contrato no lo disponía expresamente, la obligación de suministrar información era una consecuencia necesaria de la cláusula contractual. Ésta permitía el aumento de la cuota anual según fuera necesario para cubrir el verdadero costo de operación del Club Cala. Concluyó el Tribunal Superior que la negativa a suministrar la información requerida fue arbitraria e irrazonable.

A solicitud de Club Cala, mediante *certiorari*, revisamos.(5)

## II

El Art. 1210 de nuestro Código Civil, 31 L.P.R.A. sec. 3375, dispone que los contratos, una vez perfeccionados, obligan no sólo al cumplimiento de lo expresamente pactado, sino también a todas las consecuencias que según su naturaleza estén conformes con la buena fe, el uso y la ley.(6) Más allá de su literalidad, este precepto se proyecta "no sólo como complemento de lo convenido[,] sino como reguladores

---

(5) Planteó lo siguiente:

"a. Determinación de si, bajo el contrato entre las partes, la peticionaria venía obligada a justificar el aumento en las cuotas anuales y suministrar información detallada sobre los costos.

"b. Determinación de si Club Cala de Palmas venía obligada a proveer la documentación específica requerida por la recurrida.

"c. Determinación de si el tribunal recurrido incurrió o no en error al ordenar la devolución a la recurrida de la suma de $5,704.00, con sus intereses legales desde la fecha 'en que Club Cala canceló el contrato entre las partes'.

"d. Determinación de si la compareciente ha sido o no temeraria en este caso, de forma que se justifique la condena por intereses legales y honorarios de abogado." Petición de *Certiorari*, pág. 5.

(6) Dispone:

"Los contratos se perfeccionan por el mero consentimiento, y desde entonces obligan, no sólo al cumplimiento de lo expresamente pactado, sino también a todas las consecuencias que según su naturaleza sean conformes a la buena fe, al uso y a la ley." 31 L.P.R.A. sec. 3375.

de los efectos que, durante la vigencia del pacto, puedan y deban producir determinados acaecimientos y a la reacción de los propios contratantes; y por su carácter subjetivo y espiritual, el más destacado de tales factores, cuya presencia ya exige la ley en el mismo acto de la prestación del consentimiento so pena de que el contrato adolezca de algún vicio capaz de invalidarle, es el de la 'buena fe'". (Énfasis suplido.) J.M. Manresa, *Comentarios al Código Civil Español*, 6ta ed., Madrid, Ed. Reus, 1967, T. VIII, Vol. 2, págs. 439–440.

 El requisito de buena fe es elemental y, como tal, se extiende a la totalidad de nuestro ordenamiento jurídico. "'El contenido de eticidad de cada acto deberá examinarse a la luz de sus circunstancias particulares, pero el comportamiento conforme a la buena fe es precepto general que abarca toda actividad jurídica.'" (Énfasis suprimido.) *Catalytic Ind. Maint. Co. v. F.S.E.*, 121 D.P.R. 98, 113 (1988); *Velilla v. Pueblo Supermarkets, Inc.*, 111 D.P.R. 585, 587–588 (1981).

Bajo este prisma, coincidimos con el foro de instancia en que Club Cala tenía la obligación de suministrar información adecuada —no ilimitada— sino razonable. Ello era consecuencia necesaria de la cláusula contractual dispositiva de que la cuota anual estaría apuntalada y reflejaría verdaderamente el *costo* de sus operaciones. Resolvemos que, conforme con el principio de buena fe, Club Cala venía obligado a suministrar sus costos operacionales y a describir e informar a Ramírez Anglada el método utilizado para calcularlos, fijarlos y distribuirlos.

 Su obstinada actitud, de no suministrar *cualquier* información, constituyó una clara violación del espíritu del contrato. Decir lo contrario implicaría sancionar la posible fijación de una cuota anual arbitraria que no guardará proporción alguna con el verdadero costo operacional. Sería,

además, obligar a la otra parte contratante al pago de la misma sin permitirle verificar su razonabilidad o justificación. Reiteramos una vez más la máxima de que los contratos obligan no sólo al cumplimiento de lo expresamente pactado, sino también a todas las consecuencias que, según su naturaleza, estén conformes con la buena fe.

La negativa de Club Cala a suministrar cualquier información hace innecesario determinar la razonabilidad de los documentos originalmente requeridos por Ramírez Anglada. Independientemente de lo solicitado, Club Cala muy bien pudo haberle suministrado, sin mayores inconvenientes, la información pertinente a Ramírez Anglada. Ello se hizo evidente en la vista administrativa ante D.A.C.O. Allí su contador presentó evidencia documental demostrativa de cuánto costaba operar cada uno de los renglones de gastos operacionales y de cómo éstos se calculaban. El Club Cala admitió, sin dar explicación, que esta información no se enviaba a los socios. T.E., pág. 56.

No erró, pues, la ilustrada sala sentenciadora al concluir que fue Club Cala y no Ramírez Anglada quien inicialmente incumplió con el contrato. Aclarado este extremo, examinemos los efectos de tal incumplimiento.

### III

Como regla general, cuando uno de los obligados no cumple, el Código Civil le concede al perjudicado la facultad de escoger entre exigir el cumplimiento o la resolución de la obligación, con el resarcimiento de daños y abono de intereses en ambos casos. Art. 1077 del Código Civil, 31 L.P.R.A. sec. 3052. Esta facultad de resolver las obligaciones se considera implícita en las recíprocas. Sin embargo, debemos distinguir que no todo incumplimiento de una obligación recíproca conlleva efectos resolutorios. Para que así sea, es menester que la obligación incumplida sea *esencial* o que

su cumplimiento constituya el motivo del contrato para la otra parte.

Por el contrario, el incumplimiento de obligaciones *accesorias* o *complementarias* —que no constituyen el verdadero motivo para celebrar el contrato y que se incorporan al mismo para completar o aclarar las estipulaciones de los contratantes— puede dar lugar a una acción de daños y perjuicios o a cualquiera otra que justifique las circunstancias de cada caso, pero *nunca* a la acción resolutoria aludida. *Del Toro v. Blasini*, 96 D.P.R. 676 (1968); *Vélez v. Ríos*, 76 D.P.R. 860 (1954); *Municipio v. Vidal*, 65 D.P.R. 370 (1945); L. Díez-Picazo, *Fundamentos del Derecho Civil Patrimonial*, 2da ed., Madrid, Ed. Tecnos, 1983, Vol. I, pág. 860; J. Castán Tobeñas, *Derecho Civil español, común y foral*, 13ra ed., Madrid, Ed. Reus, 1983, T. III, págs. 134–135.

La exigencia de que la obligación incumplida sea la principal responde a un interés superior, acorde con el principio de buena fe, de evitar el abuso en el ejercicio de las acciones resolutorias, de promover el cumplimiento de los contratos y de impedir que, a través de una infracción menor, una de las partes trate de liberarse del vínculo porque ya no le conviene o no le interesa. Díez-Picazo, *op. cit.*, pág. 859.

Al confrontar esta doctrina con la naturaleza de la cláusula contractual en controversia nos percatamos de que la obligación original incumplida por Club Cala era de índole accesoria. El no haber provisto la información justificativa del aumento, aunque importante, no iba a la esencia ni constituía el verdadero motivo del contrato. Sin embargo, su acción de no permitir a Ramírez Anglada usar las facilidades afectó el objeto principal del contrato. Tal incumplimiento versó sobre su esencia y confirió a Ramírez Anglada la facultad de exigir su cumplimiento o resolverlo con el resarcimiento en daños, más los intereses correspondientes. Ramírez Anglada optó por lo segundo, al solicitarle a D.A.C.O.,

básicamente, que reivindicara sus derechos como consumidor con "el reembolso de lo pagado".

Esta situación avala la conclusión del tribunal sentenciador de que Club Cala dio por terminado el contrato. Su carta de 11 de septiembre de 1984[7] refleja que Club Cala no sólo se limitó a notificarle que se encontraba en mora (*notice of default*), sino que de no pagar en un plazo de treinta días (30) *el contrato se daría por terminado.* No era menester nada más. Como cuestión de realidad, por los últimos cuatro (4) años se ha visto impedido de utilizar las facilidades del Club Cala.

El tribunal no erró al ordenar la devolución de "la suma de $5,704.00 equivalente a $23/25$ del pago original de $6,200.00, con sus intereses legales desde la fecha en que Club Cala canceló el contrato entre las partes". Apéndice, pág. 63.

## IV

Finalmente, examinamos la condena relacionada con la imposición de honorarios de abogado e intereses. Club Cala aduce que no incurrió en temeridad. No tiene razón.

La determinación sobre si una parte ha procedido con temeridad o no descansa en la sana discreción del tribunal. *Fernández v. San Juan Cement Co., Inc.*, 118 D.P.R. 713 (1987); *Raoca Plumbing v. Trans World*, 114 D.P.R. 464 (1983). El concepto es dinámico. "[L]a acción que amerita la condena de honorarios de abogado es cualquiera que haga necesario un pleito que se pudo evitar . . . que lo

---

[7] En lo pertinente dicha comunicación expresaba:
". . . we hereby give you notice of default under Clause IX of the Agreement . . . and unless all monies due us are paid within 30 days of the date hereof, your Agreement will be terminated and you will lose all membership rights, in Club Cala. Additionally, if the Agreement is so terminated we will retain all monies you have paid to date as liquidated and agreed damages as permitted by Clause IX of Agreement." Apéndice, pág. 4.

prolongue innecesariamente . . . o que produzca la necesidad de que otra parte incurra en gestiones evitables." (Citas omitidas.) *Fernández v. San Juan Cement Co., Inc.*, supra, págs. 718–719. El mero hecho de que una cuestión sea debatible no exonera a una parte del pago de honorarios de abogado si la ley que rige la cuestión es tan clara que basta aplicarla a los hechos para poder decidirlo sin dificultad. *Muñiz v. Vda. de Suárez*, 52 D.P.R. 563 (1938).

 La partida de honorarios de abogado concedida no se variará en apelación, a menos que la misma sea excesiva, exigua o constituya un abuso de discreción. *Boyd v. Tribunal Superior*, 101 D.P.R. 651 (1973); *Serrano Vda. de Cartagena v. Lugo Ramírez*, 83 D.P.R. 300 (1961); *Bauzá v. Colón Medina*, 38 D.P.R. 413 (1928); *Preston v. Vázquez*, 31 D.P.R. 889 (1923).

La discusión de los errores antes señalados y el análisis de los autos nos convencen de la temeridad de Club Cala al negarse a presentar, cuando pudo, la información que adecuadamente permitiera a Ramírez Anglada comprobar la razonabilidad del aumento en la cuota anual. Obligó a Ramírez Anglada a contratar unos servicios legales profesionales, realizar gestiones innecesarias y acudir ante los foros administrativos y judiciales.

*Se dictará sentencia confirmatoria.*