Cordero, Juez Ponente
TEXTO COMPLETO DE LA SENTENCIA
Los demandantes-apelantes Federico Castro Silén ("Castro") y Leonardo Campos ("Campos") nos solicitan la revisión de una sentencia sumaria dictada por el Tribunal de Primera Instancia, Sala Superior de Bayamón, con fecha de 17 de marzo de 1995, y archivada en autos copia de la notificación de la sentencia, el 23 de marzo de 1995. En la sentencia sumaria el tribunal de instancia desestimó la causa de acción del demandante Campos, debido a que éste no figuró como parte contratante. Además, declaró con lugar la solicitud de sentencia sumaria presentada por la parte apelada, Méndez & Co. ("Méndez") desestimando así la demanda. Castro y Campos ahora apelan.
*905 El día 9 de marzo de 1993, Castro y Méndez suscribieron un contrato denominado "Sponsorship Agreement". En dicho contrato, Méndez se obligó a auspiciar un bote de carreras propiedad de los demandantes, por una cantidad mínima de $50,000.00, hasta el 31 de diciembre de 1993 o hasta que se cumplieran las cinco (5) carreras de botes programadas para ese año Por su lado, Castro se obligó a designar a su embarcación el bote: "MILLER GENUINE DRAFT", portando tal nombre y los correspondientes logotipos y mensajes comerciales. Ambas partes cumplieron con sus respectivas prestaciones.
El contrato contiene las siguientes dos cláusulas:

"2. Término.

"2.1 El término de este acuerdo comenzará el 15 de marzo de 1993, terminando el 31 de diciembre de 1993 (el "Término"); proveyendo, sin embargo que si cinco (5) de los eventos de carreras no toman lugar durante el período señalado, entonces el término se extenderá automáticamente hasta que los cinco eventos de carreras (19, 20 y 21 de marzo) para el año 1993 se lleven a cabo. Este acuerdo podrá ser terminado más temprano de acuerdo con los términos y condiciones del mismo.

"2.2 Al expirar este acuerdo, CASTRO por la presente le otorga a MENDEZ, el derecho de una primera prioridad sobre cualquiera de sus competidores para entrar en negociaciones con CASTRO sobre los términos de un nuevo acuerdo para promover los productos y auspiciar el bote.

"2.2.1 Si CASTRO y MENDEZ, de buena fe y luego de un esfuerzo razonable, no logran pactar los términos de un nuevo acuerdo, CASTRO tendrá el derecho de negociar con los competidores de MENDEZ. Cualquier contrato negociado por CASTRO con un competidor de MENDEZ será un acuerdo 'bonafide' (el 'Acuerdo del Competidor'). Al recibir tal notificación, MENDEZ tendrá 60 días para decidir si entra en un nuevo acuerdo con CASTRO bajo los mismos términos y condiciones del Acuerdo del Competidor." (Traducción nuestra.)[l]
En consideración a las anteriores dos cláusulas, Castro intimó desde octubre de 1993 en varias ocasiones a Méndez para iniciar negociaciones con el fin de renovar el contrato. El 11 de febrero de 1994, Méndez le comunicó a Castro que no renovaría el contrato.
El 20 de abril de 1994 los demandantes-apelantes instaron demanda alegando que Méndez incumplió con su deber de negociar de buena fe la renovación del contrato. Reclamaron $100,000.00 en daños y perjuicios.
El 2 de mayo de 1994 Méndez contestó la demanda alegando que el contrato venció el 31 de diciembre de 1993 y que el mismo no le imponía obligación alguna de negociar la renovación del contrato.
El 19 de agosto de 1994 Méndez presentó Moción Solicitando Sentencia Sumaria. El 20 de septiembre de 1994 los apelantes presentaron una Oposición a Moción de Sentencia Sumaria y Contra-Moción de Sentencia Sumaria.
El 17 de marzo de 1995 el tribunal de instancia, mediante sentencia-sumaria, resolvió que Méndez no faltó al cumplimiento de las cláusulas dél contrato ni actuó de mala fe como alegó la parte demandante, Como indicáramos anteriormente, con relación a Campos, instancia desestimó la causa de acción de este demandante debido a que no figuró como parte contratante. Declaró con lugar la Solicitud de Sentencia Sumaria presentada por Méndez y condenó a la parte demandante al pago de $800.00 por concepto de costas y gastos de honorarios.
El 24 de abril de 1995, los demandantes presentaron recurso de apelación ante nos solicitando se revoque la sentencia del tribunal de instancia, se decrete que el contrato en cuestión debe interpretarse como que exige la negociación de buena fe entre las partes dirigida a la posible renovación del mismo, se revoque la concesión de costas y gastos de honorarios y se ordene la continuación de los procedimientos.
*906 II
Se denomina contrato de opción el convenio por el cual una parte, conocida como optatario, concede a otra parte, llamada optante, por tiempo fijo y en determinadas condiciones, la facultad, que se deja exclusivamente a'su arbitrio, de decidir respecto a la celebración de un contrato principal. Del Toro v. Blasini, 96 D.P.R. 676, 681-682 (1968). El optatario queda enfrentado con el optante, quien está en libertad para dejar perfeccionado el contrato o para desistir de hacerlo durante el tiempo señalado. Id.
Los requisitos esenciales del contrato de opción son: (1) concesión por una parte a la otra de la facultad de decidir sobre la celebración o no del contrato principal, sin obligación alguna de ésta; (2) concesión de modo exclusivo; (3) por plazo cierto; y, (4) sin otra condición que el propio juicio del optante. Rosa Valentín v. Vázquez Lozada, 103 D P.R. 796, 807-808 (1975). La opción es una de esas obligaciones a las que se refiere el artículo 1081 cuando estatuye que si la misma "no señalare plazo, pero de su naturaleza y circunstancias se dedujere que ha querido concederse al deudor, los tribunales fijarán la duración de aquél." Díaz Alvarez v. Alvarez Rodríguez, 98 D.P.R. 115, 123 (1969).
Por otro lado, al interpretar un contrato los tribunales deben atender principal y especialmente la voluntad de los contratantes. La Costa Sampedro v. La Costa Bolívar, 112 D.P.R 9, 23 (1982). Es la intención de las partes lo que determina el alcance de las obligaciones contractuales y se juzga dicha intención tomando en cuenta, no sólo los actos coetáneos y posteriores al contrato, sino también todas las demás circunstancias indicativas de las voluntad de las partes. Art. 1234 del Código Civil, 31 L P.R.A. see. 3472; García López v. Méndez García, 102 D.P.R. 383, 394 (1974).
Sin embargo, cuando los términos de un contrato, sus condiciones y exclusiones, son claros y específicos y no dan margen a ambigüedades o diferentes interpretaciones, así deben aplicarse. Art. 1233 del Código Civil, 31 L.P.R A. see. 3471; Unisys Puerto Rico Inc. v. Ramallo Brothers Printing Inc., D.P.R (1991), 91 J.T.S. 69, pág 8853. Al interpretar un contrato si lo que ha de triunfar es la intención evidente, difícilmente será evidente una intención que no se manifestó. E. Vázquez Bote, Derecho Privado Puertorriqueño - Teoría de la Relación Jurídica - Hechos actos, negocios jurídicos, Orford, Butterworth Legal Publishers, 1992, T 4, pág. 130.
ni
Siguiendo los preceptos previamente señalados, procederemos a examinar las cláusulas en controversia del contrato celebrado entre el apelado Méndez y el apelante Castro, y así fijar el verdadero efecto y alcance de las mismas.
Los apelantes alegan, que las cláusulas 2.2 y 2. 2 del convenio, les imponían a ellos la obligación de agotar esfuerzos por lograr la renovación del contrato con Méndez, antes de poder negociar con cualquier otra entidad o persona. Además, alegan que tal contrato le prohibía a los demandantes-apelantes ni siquiera comenzar a negociar con un tercero hasta que se dieran por terminados los esfuerzos para lograr la renovación del contrato con Méndez. Alegan los apelantes que rechazaron varias ofertas de potenciales auspiciadores, competidores de Méndez, por entender que las cláusulas 2.2 y 2.2.1 del contrato les obligaban agotar esfuerzos con Méndez con el propósito de renovar el contrato, y que la actitud de silencio y de evasión de Méndez estuvo dirigida a causarle a los demandantes los daños que se están reclamando.
Por otro lado, Méndez alega que bajo tales cláusulas, él no tenía obligación alguna de negociar la renovación del contrato ni de notificar sus intenciones y que por tanto no es responsable de los alegados daños sufridos por los apelantes.
En primer término, en virtud de las cláusulas 2.2 y 2 2 1 del convenio, es evidente que en cuanto a la renovación del contrato lo que existe entre ambas partes es un contrato de opción a favor de Méndez. Como muy bien concluyó el tribunal de instancia, tales cláusulas establecen que no es hasta la terminación del contrato, o sea, el 31 de diciembre de 1993, que Castro le concede el derecho de primera opción a Méndez sobre cualquiera de sus competidores. La opción favorece a Méndez para éste comenzar negociaciones sobre los términos de un nuevo acuerdo. En este tipo de contrato de opción sólo surge una obligación unilateral de la parte optataria, en este caso Castro, de concederle a *907 Méndez una primera opción de negociar un nuevo contrato. Por lo tanto, el optante, en este caso Méndez, puede rehusar ejercitar la opción, y no se le puede imponer ningún tipo de penalidad si se niega a beneficiarse de la opción. Además, al Méndez no tener obligación alguna bajo la cláusulas en cuestión, no incurrió en conducta antijurídica, por lo que no se le puede responsabilizar de los alegados daños sufridos por los apelantes. Ramos Lozada v. Orientalist Rattan Furniture, Inc., _ D.P.R._(1992), 92 J.T.S. 74, pág. 9577.
En segundo término, el apelante arguye que la intención al contratar las cláusulas en cuestión, fue negociar de buena fe la posible renovación del contrato. Sin embargo, la prueba ofrecida en este caso no desvirtúa de ninguna forma la intención manifestada en los términos de las controvertidas cláusulas. Del texto del convenio se desprende con claridad que la intención de los contratantes era un contrato de opción donde sólo se obligaba Castro a concederle una primera opción a Méndez. Sólo si este último ejercía esa opción es que se realizarían las negociaciones de buena fe entre las partes con el propósito de renovar el contrato y así expresamente lo acordaron.
En tercer término, no nos convence el argumento de los apelantes de que Méndez actuó de mala fe. A partir de la terminación del contrato, el 31 de diciembre de 1993, hasta el 11 de febrero de 1994, que es cuando Méndez rechaza el ejercitar la opción de negociar para renovar el contrato con Castro, pasaron cuarenta y dos (42) días. Este término de tiempo nos parece razonable y no vemos en el mismo la mala fe alegada por los apelantes Además, antes de esa fecha Méndez nunca le dio indicio alguno a los demandantes de que iba a ejercer la opción. Si habían otros competidores era la responsabilidad de Castro y Campos, como buenos comerciantes, de atender las ofertas, dejándole así saber a Méndez. Los contratos deben prepararse, celebrarse, cumplirse y además interpretarse con buena fe. Art 1210 del Código Civil, 32 L.P.R.A. see 3575; Albert G. Spota, Tratado de Locación de Obra, 3ra ed., pág. 527 citado en Francisco Levy v. Autoridad de Edificios Públicos, _ D P.R _ (1994), 94 J T S 32, pág. 11630. El cumplimiento de lo pactado está estrechamente vinculado con la buena fe de los contratantes. Unisys Puerto Rico Inc. v. Ramallo Brothers Printing Inc., supra, págs. 8853-8854.
Por último, Castro cuestiona el que se le haya impuesto al pago de $800.00 en concepto de costas y honorarios de abogado. El Tribunal Supremo ha expresado en reiteradas ocasiones que la norma prevaleciente es que los honorarios de abogado se conceden por temeridad, Asociación de Condóminos v. Treyes Reyes, 120 D.P.R 574, 579 (1988); y " no variará en apelación, a menos que la misma sea excesiva, exigua o constituya un abuso de discreción " Ramírez v. Club Cala de Palmas, 123 D.P.R. 339, 350 (1989). Cuando en la sentencia no se hace conclusión específica al efecto de que un litigante perdidoso actuara con temeridad, pero se le condena al pago de honorarios de abogado, la presunción es que tal conclusión está implícita en la sentencia dictada. Sucn. Arroyo v. Municipio, 81 D.P.R. 434, 435 (1959); Rodríguez v. Alcover, 78 D.P.R. 822, 826 (1955). La determinación sobre si una parte ha procedido o no con temeridad, descansa en la sana discreción del tribunal sentenciador, Ramírez v. Club Cala de Palmas, supra, pág. 349; y no se revisará una determinación de temeridad a menos que se demuestre que se ha cometido un abuso de discreción. Montañez Cruz v. Metropolitan Cons. Corp., 87 D.P.R 38, 40 (1962). Revocaremos la decisión discrecional del tribunal de instancia únicamente cuando al revisar el récord en su totalidad nos convencemos de que se ha cometido un error significativo o claro de juicio en cuanto a un asunto material y relevante. Pueblo v. Ortega Santiago, _ D.P.R. _ (1990), 90 J.T.S. 12, pág. 7375; In Re: San Juan Dupont Plaza Hotel Fire Litigation, 859 F.2d 1007, 1019 (1st Cir. 1988).
En el caso de marras, el apelante no ha demostrado que el foro de instancia incurrió en abuso de discreción al imputarle temeridad. Tampoco es excesiva la cantidad de honorarios impuesta. Además, los hechos del caso apoyan la determinación del tribunal sentenciador. A nuestro juicio, debido a la claridad de las cláusulas del contrato en controversia, procede en el presente caso la condena en honorarios de abogado por cuanto el pleito presentado era uno que razonablemente se pudo evitar. Corpak Inc. v. Ramallo Brothers Printing Inc., _ D.P.R. _ (1990), 90 J.T.S. 37, pág 7572; Ramírez v. Club Cala de Palmas, supra.
IV
Por los fundamentos antes expresados, se confirma la sentencia recurrida.
*908 Lo acuerda y manda el Tribunal y lo certifica la Secretaria General.
María de la C. González Cruz
Secretaria General
ESCOLIOS 95 DTA 229
1. "2. Term.
2.1 The term of this agreement-shall commence on March 15-, — 1993; -ending December 31st, 1993 (the "Term"); provided, however that if five (5) Racing Events do not take place during the aforesaid period, then the Term shall be automatically extended until such time as the five Racing Events scheduled (March 19, 20 and 21) for the 1993 year take place. This Agreement could be terminated earlier in accordance with the terms and conditions hereof.

"2.2 Upon expiration of this Agreement, CASTRO-hereby-grants MENDEZ the right.of first priority over any of its competitors to enter into negotiations with CASTRO on the terms of a new agreement to promote the Products and sponsor the Boat.

"2.2.1 If CASTRO and MENDEZ cannot agree in good faith and after reasonable effort on the terms of a new agreement, CASTRO shall have the right to negotiate with competitor of MENDEZ. Any contract negotiated by CASTRO with a competitor of MENDEZ shall be a "bona-fide" agreement (the "Competitor's Agreement). Upon receipt of such notice, MENDEZ shall have 60 days to decide whether to enter into a new agreement with CASTRO under the same terms and conditions as the Competitor Agreement. "