Cordero, Juez Ponente
*847 TEXTO COMPLETO DE LA SENTENCIA
Francisco J. Rovira Fernández {"Rovira") solicitó oportunamente la revisión de una "Resolución Parcial" emitida por el Director de la Oficina de Etica Gubernamental ("OEG") el 20 de febrero de 2001, notificada el 21 de febrero de 2001. En dicha Resolución se le impuso a Rovira multas administrativas ascendientes a un total de $172,500.00 por violaciones a la Ley de Etica Gubernamental ("Ley de Etica") y a sus Reglamentos. Rovira presentó oportunamente Moción de Reconsideración, la cual fue declarada No Ha Lugar el 27 de marzo de 2001. Por los fundamentos que se discuten a continuación, se confirma la Resolución emitida por la OEG.
I
El 20 de julio de 1999, se presentó querella contra Rovira, Subdirector de la Autoridad de Puertos de Puerto Rico ("Puertos"), desde el 1ro. de septiembre de 1995 hasta el 30 de abril de 1998. En la misma se alegó violación a los Artículos 3.2 (a) (c) (h), y 4.11 (A) (1) de la Ley de Etica, 3 L.P.R.A. §1822 (a) (c) (h), 1841(a)(1) (Suplemento 1999); los Artículos 6 (A) (G), 8 (A) (C) (G), 13 (C) y 15 del Reglamento de Etica Gubernamental Núm. 4827 ("Reglamento Núm. 4827") del 20 de noviembre de 1992; y el Artículo 4.301 del Reglamenzo Sobre Radicación de Informes Financieros Núm. 3549 ("Reglamento Núm. 3549") del 4 de diciembre de 1987.
En la querella, se ordenó a Rovira: (a) mostrar causa por la cual no se debía imponerle una multa de hasta $5,000.00 por cada infracción demostrada; (b) pagar al Estado como sanción civil una suma equivalente hasta tres veces el valor del beneficio económico recibido, y (c) mostrar causa por la cual no se deba destituir de sus cargos.
II
A Rovira se le imputó ser el dueño de Transportation Consultant International ("TCI"), empresa que mantenía relaciones contractuales de servicios de representación y consultoría marítima, entre otros negocios con Puertos. Rovira era el incorporador, Presidente, Vicepresidente, Tesorero y Secretario de TCI. Rovira en su capacidad de subdirector de los Puertos autorizó el pago, fuera de los canales ordinarios de esa agencia de la suma de $45,000.00 a favor de TCI por servicios que alegadamente nunca fueron prestados. Además, se le imputó a Rovira el dejar de incluir información sobre TCI y sobre un Porsche 911 del 1980 de su propiedad en los formularios de los informes financieros radicados en la OEG.
El 13 de agosto de 1999, Rovira presentó la contestación a la querella, negando todas las alegaciones de la misma, pero sin exponer defensas afirmativas. Posteriormente, según le fuera ordenado, presentó una contestación enmendada. Así las cosas, el 3 de septiembre de 1999, se señaló vista para el 2 de noviembre de 1999. Rovira, el día de la vista, solicitó que la misma se aplazara por encontrarse pendiente ante el Tribunal de Primera Instancia una vista preliminar por unas denuncias presentadas en su contra sobre los mismos hechos alegados en la querella, y corría el riesgo de ser obligado a incriminarse mediante su propio testimonio y contra su voluntad. El Oficial Examinador no acogió el aplazamiento solicitado; sin embargo, garantizó el derecho de Rovira a no incriminarse y procedió a celebrar vista los días 2,4 y 8 de noviembre de 1999.
La OEG presentó prueba testifical y documental. Rovira contrainterrogó a los testigos y presentó copia de la Orden Administrativa Núm. 93 y un Memorando del Director de Puertos de fecha del 15 de enero de 1996. La OEG sometió su caso y la audencia quedó suspendida para cuando concluyeran las causas criminales ante el Tribunal de Primera Instancia. Transcurrido el término, se ordenó a Rovira informar el status de las causas criminales. Este ignoró la orden emitida por la agencia, por lo que el Oficial Examinador procedió a reanudar la audiencia el 12 de septiembre de 2001. En dicha fecha, no compareció Rovira, ni tampoco excusó su incomparecencia. Ante tal situación, el Oficial Examinador ordenó notificar al querellado copia de la minuta que dispuso, inter alia, que se acogía la incomparecencia de Rovira unida a su reiterada conducta de no responder a los requirimientos de la agencia, como una renuncia a presentar prueba en esta acción, por lo que a base de la *848 prueba presentada, se estimaban probadas las alegaciones de la querella y las violaciones a la ley y a los reglamentos que le fueron imputados.
El 20 de septiembre de 2000, Rovira le señaló al Oficial Examinador que no se le había brindado las garantías mínimas al debido proceso de ley al querer obligarle a renunciar su derecho a no incriminarse y a permanecer en silencio, y a que el Oficial Examinador debió haber tomado conocimiento por lo dicho en la prensa en el caso criminal que había sido pospuesto. El Oficial Examinador impuso una sanción económica de $150.00 solidariamente a Rovira y a su abogado por incumplir con las órdenes de la agencia y por la falta de comparecer a las vistas en las fechas señaladas. Finalmente, el 26 de enero de 2001, Rovira sometió el caso e informó que el Tribunal de Primera Instancia no encontró causa probable para acusar en cuanto a seis de los delitos imputados, pero sí encontró causa probable por violación al Artículo 3.3 (b) de la Ley de Etica, 3 L.P.R.A. §1823 (b) (Suplemento 1999).
El 14 de febrero de 2001, el Oficial Examinador emitió un informe. En dicho informe, concluyó que Rovira había incurrido en violación a la Ley de Etica y a los mencionados reglamentos. El Oficial Examinador recomendó que se le impusieran multas:

"1- Por violación al Artículo 3.2 (c) de la LEG, supra, la suma de $5,000.00.

2- Por violación al Artículo 3.2 (h) de la LEG, supra, la suma de $5,000.00.

3- Por violación al Artículo 6(G) del Reglamento de Etica Gubernamental y Artículo 4.301 del Reglamento Sobre Radicación de Informes Financieros:

a. Por no divulgar el vehículo Porsche en los informes pertenecientes a los años 1994, 1995, 1996, 1997 y 1998, la suma de $2,500.00por cada año, para un total de $12,500.00.

b. Por no divulgar su participación en la Corporación TCI en los informes financieros rendidos en los años 1996, 1997y 1998, la suma de $5,000.00por cada año. Para un total de $15,000.00.

4- Según autorizado por el Artículo 3.8 (b) (3) de la LEG, 3 L.P.R.A. §1828 (b) (3), y el Artículo 22 (D) del Reglamento de Etica Gubernamental, el querellado vendrá obligado a restituir al Estado la suma de $135,000.00, equivalenues a tres veces el valor del beneficio económico que recibió, o sea, la suma de $45,000.00 que ilegalmente le fue pagada a la corporación TCI."
Todas estas multas ascienden a la cantidad de $172,500.00. El 21 de febrero de 2001, el Director Ejecutivo de la OEG emitió una Resolución en la que acogió en su totalidad las recomendaciones del Oficial Examinador. Le impuso, además, una sanción de $3,000.00 por concepto de honorarios de abogado por manifiesta temeridad. El 13 de marzo de 2001, Rovira solicitó la reconsideración del dictamen la cual fue declarada No Ha Lugar el 27 de marzo de 2001.
III
Ante este Tribunal, Rovira alegó que la OEG erró: (1) al rechazar el planteamiento de que la determinación de no causa probable por ausencia de prueba de los delitos de apropiación ilegal agravada, apropiación ilegal y el artículo 3.2(c) de la Ley de Etica, 3 L.P.R.A. § 1823 (c) (Suplemento 1999), impedía la determinación administrativa sobre los mismos hechos; (2) el determinar que se cumplió el requisito sine qua non del Artículo 3.2 (h) de la Ley de Etica, 3 L.P.R.A. §1823 (h) (Suplemento 1999); (3) al imponer multas excesivas por no incluir información en sus informes financieros; y (4) al imponer una multa de $3,000.00 por concepto de honorarios de abogado por alegada temeridad.
Posteriormente, el 7 de mayo de 2001, la OEG presentó "Moción en Oposición a Expedición de Recurso de Revisión Judicial" en la cual alegó que se incumplió con el Reglamento de este Tribunal al no incluir como parte *849 del apéndice: (1) copia de la minuta de 12 de septiembre de 2000; (2) "Moción Aclaratoria" sobre dicha Minuta; (3) ciertas órdenes emitidas por el Oficial Examinador; (4) copia completa de la Resolución Parcial; (5) orden para mostrar causa del 21 de septiembre de 2000; y (6) documentos en referencia a la actitud asumida por Rovira en el proceso.
El 21 de mayo de 2001, Rovira presentó "Réplica a Moción en Oposición a Expedición de Recursos de Revisión Judicial" en la cual indicó que a pesar de que faltan algunos de los documentos, dicha ausencia no menoscaba la posición de este Tribunal de entender en el recurso, ya que la información se suple de otro modo, como lo es la propia Resolución emitida por el Oficial Examinador, por lo que tal incumplimiento no es uno de naturaleza fatal.
IV
Con relación al planteamienco concerniente a la falta de jurisdicción, no cabe duda que la Regla 59(E) del Reglamento del Tribunal de Circuito de Apelaciones establece que debe incluirse, como parte del apéndice del recurso de revisión, la querella original y una copia de toda resolución u orden y toda moción o escrito de cualesquiera de las partes que forme parte del expediente original administrativo, en las cuales se discuta expresamente cualquier asunto planteado en la solicitud de revisión, o que sean relevantes a ésta; y de cualquier otro documento que forme parte del expediente original ante la agencia que puede serle útil a dicho foro apelativo para resolver la controversia que tiene ante sí.
Tal inclusión de documentos persigue el propósito de que el foro apelativo tenga todos los elementos de juicio que sean necesarios o útiles para que dicho foro pueda resolver cabalmente el recurso ante su consideración. Por ende, la desestimación del recurso por dejar de incluir uno de los documentos reglamentarios sólo procede cuando tal omisión impida o haga difícil que el foro apelativo pueda resolver cabalmente el asunto ante su consideración. M & R Developers, S.E. v. Banco Gubernamental de Fomento._D.P.R._, (12 mar. 2001), 2001 J.T.S. 37, a la pág. 980; Codesi Inc. v. Municipio de Canóvanas,_D.P.R._(24 mar. 2000), 2000 J.T.S. 61, a la pág. 883.
. Este Tribunal tiene la facultad para desestimar recursos de apelación por incompletos, mal perfeccionados o presentados fuera de término, pero el inflexible ejercicio de esa facultad, exigiendo de forma restrictiva y automática el cumplimiento con todas las disposiciones de su Reglamento, podría, en la práctica, convertir los recursos de apelación en recursos discrecionales. Rodríguez Santiago v. Sucn. Manuel Martínez,_D.P.R._ (18 ago. 2000), 2000 J.T.S. 138, a la pág. 53.
Por lo que en el caso ante nos, resolvemos que la omisión de incluir como parte del Apéndice algunos documentos que forman parte del expediente de la OEG, no impide, aunque sí se acerca bastante, que este Tribunal pueda resolver el asunto ante nuestra consideración. Por tanto se declara Sin Lugar la "Moción en Oposición a Expedición de Recurso de Revisión Judicial".
V
El primer y segundo señalamiento de error consisten en: (a) considerar si la OEG erró al rechazar que la determinación de no causa probable para los delitos de apropiación ilegal agravada, apropiación ilegal y el artículo 3.2 (c) de la Ley de Etica impedía la determinación administrativa de que se cometieron los hechos imputados a Rovira, y (b) determinar si se cumplió el requisito sine qua non del Artículo 3.2 (h). A Rovira no le asiste la razón.
La Ley de Etica reglamenta la conducta de los funcionarios y empleados de la Rama Ejecutiva del Estado Libre Asociado de Puerto Rico, incluyendo sus corporaciones públicas y las agencias que estén bajo el control de dicha Rama, sus municipios, corporaciones y consorcios municipales. También establece algunas restricciones para las actuaciones de exservidores públicos de las Ramas Ejecutiva, Legislativa y Judicial. Además de lo que dispone la Constitución del Estado Libre Asociado de Puerto Rico, las leyes, los reglamentos y las órdenes ejecutivas en vigor, la Ley de Etica establece ciertas disposiciones en cuanto a la aprobación de normas para regir *850 la conducta de los servidores públicos de las Ramas Legislativa y Judicial. 3 L.P.R.A. § 1821.
A Rovira se le imputó violación al Artículo 3.2 (a) (c) (h) de la Ley de Etica que establece:

"(a) Ningún funcionario o empleado público desacatará, ya sea personalmente o actuando como servidor público, las leyes en vigor, ni las citaciones u órdenes de los Tribunales de Jusuicia, de la Rama Legislativa o de las agencias de la Rama Ejecutiva que tengan autoridad para ello.

(c) Ningún funcionario o empleado público utilizará los deberes y facultades de su cargo, ni la propiedad o fondos públicos, para obtener, directa o indirectamente para él, para algún miembro de su unidad familiar, ni para cualquier otra persona, negocio o entidad, ventajas, beneficios o privilegios que no estén permitidos por ley.

(h) Ningún funcionario público podrá intervenir en forma alguna en cualquier asunto en el que él o algún miembro de su unidad familiar tenga un conflicto de intereses." 3 L.P.R.A. § 1822 (a) (c) (h)."

Además, se le imputó violación al Artículo 4.11 (A) (1) de la Ley de Etica que establece lo siguiente:

"(a) Acción de naturaleza penal.

(1) Toda persona que, a sabiendas y voluntariamente, falsifique o deje de radicar o divulgar cualquier información sustancial que este subcapítulo le requiere someter, incurrirá en delito grave y convicta que fuere, será sancionada por cada violación con pena de reclusión por un término fijo de un año o multa de dos mil (2,000) dólares, o ambas penas a discreción del tribunal.

De mediar circunstancias agravantes, la pena fija establecida podrá ser aumentada hasta un máximo de dos (2) años o hasta cinco mil (5,000) dólares. De mediar circunstancias atenuantes, podrá ser reducida hasta un mínimo de seis (6) meses un día o hasta mil (1,000) dólares. 3 L.P.R.A. § 1841 (a) (1)."

A su vez, ciertas violaciones a los Reglamentos de la OEG que consisten básicamente en disposiciones similares a las de los Artículos 3.2 (a) (c) (h) y 4.11 (a), supra. Asimismo, violaciones al: (a) Artículo 13 (C) del Reglamento Núm. 4827 al aceptar otro empleo cuando esté, o parezca estar, en conflicto sustancial con los intereses de la agencia ejecutiva para la cual trabaja, interfiera razonablemente en el desempeño de sus funciones; y (b) Artículo 6 (A) del mismo Reglamento que dispone evitar cualquier acción que pueda resultar en, o crear la apariencia de usar las facultades de un cargo, propiedad o fondos para fines privados o dar trato preferencial a cualquier persona y perder independencia y parcialidad.
Recientemente, el Tribunal Supremo de Puerto Rico resolvió en cuanto a los efectos que tiene una determinación judicial penal sobre la consideración de una querella en el área administrativa en el caso Tribunal Examinador de Médicos de Puerto Rico v. Cañas Rivas,_D.P.R._(23 abril 2001), 2001 J.T.S. 60. Dicho caso versa sobre la determinación de no causa probable para el arresto del Sr. Cañas por el delito de agresión agravada y la determinación del Tribunal Examinador de Médicos de violar varios artículos de su Reglamento y de suspender la licencia del Dr. Cañas por seis meses con la condición de que se someta a un tratamiento psicológico por los mismos hechos
En dicho caso, otro panel de este Tribunal resolvió que la determinación judicial de no causa probable para el arresto contra el Dr. Cañas, era vinculante en la esfera administrativa. Este Tribunal señaló para sostener dicha determinación que, a pesar de que la absolución en el proceso penal no era vinculante, en el campo administrativo existe una situación distinta cuando se trata de una determinación de no causa probable para el arresto. En ésta *851 "una mera scintilla de evidencia" es suficiente para sostener la determinación de no causa. Este Tribunal comparó esa norma evidenciaría con la norma de que las decisiones administrativas deben estar fundadas en prueba sustancial y concluyó que la determinación de causa probable era un estándar de prueba menor que el requerido en la esfera administrativa. En consecuencia, este Tribunal resolvió que la determinación de inexistencia de causa probable para arresto contra el querellado, era suficiente para desestimar la querella administrativa que pesaba en su contra por los mismos hechos.
El Tribunal Supremo revocó a este Tribunal en Tribunal Examinador de Médicos de Puerto Rico v. Cañas Rivas, supra. El Tribunal Supremo expresó que el procedimiento disciplinario no va dirigido a castigar al querellado por la falta cometida, "sino a proteger a la comunidad y ala profesión mediante una investigación de sus condiciones morales para determinar si puede continuar en la práctica (profesional]”, citando a In re: Liceaga, 82 D.P.R. 252, 255 (1961). En el procedimiento disciplinario no es necesario probar los hechos de igual manera como si se tratase de un caso criminal. In re: Calzada Llanos, 124 D.P.R. 411, 425 (1989).
En los procesos administrativos disciplinarios, particularmente en el contexto de funcionarios o empleados públicos, sometidos a un procedimiento administrativo para su destitución, se ha resuelto reiteradamente que el hecho de que una persona haya sido juzgada y absuelta en un proceso penal no impide que se formulen y diluciden cargos administrativos en su contra por los mismos hechos que motivaron el caso penal. La absolución penal no confiere inmunidad en el campo administrativo. San Vicente v. Policía de Puerto Rico, 142 D.P.R. 1, 6 (1996); Pagán Hernández v. U.P.R., 107 D.P.R. 720, 749 (1978).
El Tribunal Supremo reiteró la norma de que la acción administrativa es independiente de la criminal porque tienen propósitos distintos, por lo que una no puede estar supeditada a la otra. Tribunal Examinador de Médicos de Puerto Rico v. Dr. Luis R. Cañas Rivas, supra, a la pág. 1156; Cruz v. Garrido Morales, 58 D.P.R. 653, 663 (1941). Se trata de procedimientos que requieren diferentes grados de prueba. El Tribunal Supremo enfatizó que la determinación de ausencia de responsabilidad penal, no confiere per se ninguna inmunidad contra procedimientos disciplinarios profesionales o procedimientos disciplinarios administrativos instados por los mismos hechos que motivaron la acción penal. Esto, sin que importe que la referida determinación judicial haya sido una de archivo de una denuncia criminal, de no causa probable para arrestar o acusar, o de absolución luego de un juicio. Ello es así, no sólo porque todos estos distintos procedimientos aparejan diferentes grados de prueba, sino, además, porque son procedimientos de naturaleza disímil, que persiguen objetivos concretos distintos. En particular, unos hechos pueden no ser punibles desde la perspectiva penal por la falta del elemento de mens rea y aún así, ser sancionables disciplinariamente por la importancia que tiene para las instituciones del gobierno y para las profesiones el fin de que se evite aun la apariencia de conducta impropia. Tribunal Examinador de Médicos de Puerto Rico v. Dr. Luis R. Cañas Rivas, supra, a la pág. 1157.
En el caso de marras no se conocen los fundamentos de la decisión judicial de que no existe causa en la vista preliminar en alzada. Por lo que sería especulativo interpretar lo que aconteció en el foro judicial. En cambio, es de medular importancia el hecho de que la Ley de Etica y sus Reglamentos fueron creados para desalentar las actuaciones de los funcionarios públicos en representación de la administración del gobierno de lucrarse del patrimonio del pueblo. Es intolerable que estos funcionarios tengan conflictos de interés de índole financiera o económica con el cargo que desempeñan. La Ley de Etica responde a la necesidad de restaurar la confianza del pueblo en el gobierno y en sus funcionarios, de manera tal que se debe prevenir y penalizar el comportamiento de aquellos funcionarios que en el desempeño de sus labores gubernamentales, vulneren los principios básicos de una ética de excelencia.
La OEG no tenía que seguir la determinación del foro judicial en la esfera penal. Según hemos expresado, son dos procedimientos disímiles, por lo que la OEG podía realizar sus determinaciones de hechos a la luz de la prueba y los testimonios que le fueran presentados y a base de la credibilidad que ésta otorgue a los mismos.
La OEG no actuó de modo arbitrario, ilegal o en forma irrazonable que requiera nuestra intervención. Más aún cuando éste es el organismo administrativo sobre el cual recae la obligación de velar porque se cumpla con *852 las disposiciones de la Ley de Etica. El informe del Oficial Examinador es uno detallado donde se relata en qué consiste la querella, los procedimientos llevados a cabo; se copian extractos de minutas, se hace un detalle minucioso de las determinaciones de hechos a las que llegó y se cita el derecho y la jurisprudencia aplicable a la controversia.
El Tribunal Supremo de Puerto Rico ha sido consistente al establecer la presunción de regularidad y corrección de que gozan las decisiones administrativas emitidas por organismos que cuentan con los conocimientos especializados sobre los asuntos que vienen llamados a administrar por ley. Asociación Vecinos Hospital San Jorge v. United Medical Corporation y Gerónimo Partnership,_D.P.R._(19 ene. 2000), 2000 J. T.S. 21, a la pág. 560, y casos allí citados.
El foro recurrido determinó que se estableció que se había violado el Artículo 3.2(h), supra. Dicho artículo de ley ordena que ningún funcionario público intervenga en forma alguna con asuntos en que él o algún miembro de su unidad familiar tenga, o pueda tener, un conflicto de intereses. Debemos establecer que los tribunales no deben intervenir con la apreciación de la prueba, a menos que tales determinaciones no estén sustentadas por evidencia sustancial en el récord, sean irrazonables o arbitrarias o carezcan totalmente de fundamentos. RBR Construction, S.E. v. Autoridad de Carreteras y Transportación de P.R. y su Junta de Subastas,_D.P.R._(11 die. 1999), 2000 J.T.S. 7, a la pág. 468. "Evidencia sustancial" que obre en el expediente administrativo es aquella relevante que una mente razonable podría aceptar como adecuada para sostener las determinaciones de hechos del foro administrativo que estén respaldadas por evidencia sustancial que surja del expediente administrativo considerado en su totalidad. Municipio de San Juan v. Junta de Calidad Ambiental, D.P.R. (14 die. 2000), 2000 J.T.S. 193, a la pág. 474; Asociación Vecinos del Hospital San Jorge v. United Medical Corporation y Gerónimo Partnership, Etc., supra, a las págs. 560-561; Puerto Rico Telephone Company v. Junta Reglamentadora de Telecomunicaciones de Puerto Rico, D.P.R. (12 jun. 2000), 2000 J.T.S. 98, a la pág. 1266.
En el caso ante nos, las determinaciones realizadas por el Oficial Examinador están fundamentadas en evidencia sustancial y su determinación es razonable según los hechos del caso ante nuestra consideración. Por todo lo antes esbozado, este Tribunal concluye que los primeros dos errores señalados no se cometieron.
VI
El tercer y cuarto error señalado están relacionados a considerar como excesiva la multa por no incluir en los informes financieros el Porsche 911 y la participación en TCI, además de imponer una multa de $3,000.00 por honorarios de abogado por temeridad.
Los formularios de los informes financieros requerían que se divulgara cualquier vehículo de motor de su propiedad que hubiese adquirido inclusive en años anteriores al período del informe financiero. El Oficial Examinador recomendó, y así fue acogida, una multa de $2,500.00 por cada año en que no se informó el vehículo. Como resultado, la multa asciende a $12,500.00. En el caso de la participación en TCI, Rovira alega que su participación se limitó a registrar la entidad como una corporativa. No obstante, es necesario indicar que el Oficial Examinador determinó que la participación de Rovira estuvo vinculada, inclusive, a la preparación de propuestas presentadas a la Autoridad y cómo presentar las mismas para que éstas fueran aprobadas. Indudablemente, Rovira tenía un interés en la participación de TCI que debió informar.
El Reglamento Núm. 4827 establece en su Artículo 22©, las sanciones por violación a las disposiciones de ley:

"Cualquier violación a las disposiciones de la Ley, así como de los reglamentos y normas emitidas al amparo de la misma, podrá ser penalizada con multas administrativas que no excedan de cinco mil dólares ($5,000) por cada violación, según lo autoriza la Ley Núm. 170, citada."

Por tanto, el Oficial Examinador tiene discreción para imponer la multa por omitir información según requiere el Artículo 4.301 (L) (l).del Reglamento Núm. 3549 que dispone:

*853
"Deberá informarse aquellos activos poseídos y/o adquiridos por la persona obligada a radicar el informe financiero o por los miembros de su unidad familiar durante el año natural, que tengan un justo valor en el mercado en exceso de $1,000 al final del año anterior; y aquellos activos que produzcan ingresos en exceso de $100 en dividendos, rentas, intereses de cualquier índole, pensiones, participaciones en la distribución de sociedades, empresas comunes y otras empresas comerciales y un desglose completo de todas las inversiones en corporaciones cerrada negocios propios."

Según se desprende de los hechos del caso, Rovira no presentó en sus informes financieros requeridos por la Ley de Etica, el vehículo Porsche 911 de 1980 para los años 1994, 95, 96, 97 y 98, ni tampoco informó sobre su participación en la TCI durante los años 1996, 97 y 98, por lo que el Oficial Examinador podía imponer multas hasta $5,000.00 según el Artículo 22(C), supra. El Oficial Examinador evaluó la prueba y recomendó una multa de $2,500.00 por cada año en que no se reportó el vehículo Porsche 911 de 1980. En cuanto omitir la información sobre la participación en TCI, el Oficial Examinador optó por imponer la multa máxima, por entender que de haber informado Rovira su interés en TCI, el Estado hubiese podido detectar el esquema fraudulento rápidamente pudiendo salvar fondos del erario público. El Oficinal Examinador indicó que "no cabe duda que lo antes mencionado delata un mens rea del querellado". Considerando todos los hechos que quedaron probados, debemos otorgarle deferencia a la apreciación del Oficial Examinador en el caso de autos y confirmar las multas impuestas por no considerar las mismas tan excesivas que estremezcan la conciencia de este Tribunal y por estar éstas dentro de los poderes que tiene la agencia.
Con relación a los honorarios de abogado, debemos señalar que el propósito de la imposición de honorarios de abogado en casos de temeridad, es "establecer una penalidad a un litigante perdidoso que por su terquedad, obstinación, contumacia e insistencia en una actitud desprovista de fundamentos, obliga a la otra parte, innecesariamente, a asumir molestias, gastos, trabajo e inconveniencias que prolonguen un pleito. ” Ramírez v. Club Cala, 123 D.P.R. 339, 350 (1989); Fernández v. San Juan Cement Co., Inc., 118 D.P.R. 713, 718 (1987). Esta determinación descansa en la sana discreción del tribunal sentenciador y la cuantía concedida no se variará en apelación, a menos que la misma sea exigua o constituya un abuso de discreción. Id.; factores no presentes en este caso.
Al revisar los hechos de este caso, encontramos que ciertamente el querellado no compareció y no excusó su incomparecencia a vistas previamente notificadas. Además, tampoco siguió las órdenes del Oficial Examinador y por ello fue amonestado e incluso se le impuso sanción económica. En fin, Rovira asumió una actitud temeraria que fue sancionada por la agencia. Por tanto, el foro a quo no abusó de su discreción al determinar la existencia de temeridad e imponer $3,000.00 de honorarios.
VII
Por los fundamentos aquí discutidos, no se expide el auto de revisión.
Lo acuerda y manda este Tribunal y lo certifica la Secretaria General.
Aida Ileana Oquendo Graulau
Secretaria General